UNION PACIFIC RAILROAD COMPANY V. STATE OF
NEBRASKA.

FILED JANUARY 9, 1911.   No. 16,244.

Municipal Corporations:   REGULATION OF STOCK-YARDS:   ORDINANCES:
   VALIDITY.   Where a city, under power expressly delegated by the
   legislature, passes an ordinance regulating the location of stock-
   yards, the regulation stands on the same footing as a statute, and
   will not be declared void as an arbitrary or unreasonable inter-
   ference with the rights of the owners of stock-yards under the
   guise of police regulation, unless that fact is shown by satisfactory
   evidence.

ERROR to the district court for Buffalo county:
BRUNO O. HOSTETLER, JUDGE.   *Affirmed.*

*Edson Rich, C. A. Robinson* and *J. A. Sheean,* for plaintiff in error.

*E. C. Calkins* and *H. M. Sinclair, contra.*

Rose, J.

In the police court of the city of Kearney the Union Pacific Railroad Company, defendant, was convicted of violating a city ordinance regulating the location of stockyards. Upon appeal to the district court for Buffalo county, defendant was ordered to pay a fine of $10 for the offense described, and as plaintiff in error it now presents to this court for review the record of its conviction.

Among the powers which the legislature delegated to the city of Kearney to be exercised by ordinance are the following: "To make regulations to secure the general health of the city, to prescribe rules for the prevention, abatement, and removal of nuisances; to make and prescribe regulations for the construction, location, and keeping in order of all slaughter-houses, stock-yards, warehouses, sheds, stables, barns, dairies, or other places where offensive matter is kept, or is likely to accumulate, within the corporate limits or within five miles, and to limit, or fix, the maximum number of swine or neat cattle that may be kept in sheds, stables, barns, feed lots, or other inclosure within the city." Comp. St. 1909, ch. 13, art. III, sec. 48, subd. 46.

In exercising the powers thus granted, the city of Kearney passed an ordinance containing the following provisions: "It is hereby made unlawful for any person or persons, firm, partnership, corporation or association, to erect, keep or maintain any stock-yards or pens which are kept or used for the yarding or keeping of any horses, cattle, hogs or sheep in the city of Kearney within the following limits, bounded as follows: By Tenth avenue on the west, on the north by Thirty-first street, thence south on Q street to the Union Pacific railroad tracks,

thence west on said railroad tracks to K street, thence
south on K street to the B. & M. railroad tracks, thence
east on said B. & M. railroad tracks to Q street, thence
south on Q street to Eleventh street, thence west on
Eleventh street to where Eleventh street intersects Tenth
avenue."

It is established by the evidence without any contro-
versy that within the limits thus described defendant's
stock-yards were located and maintained at the time
charged in the information, namely, May 28, 1908. It was
for this infraction of the law defendant was fined, and
the only defense to the prosecution is the invalidity of
the ordinance. The stock-yards have been in the present
location seven or eight years. The ordinance, if valid,
will require their removal, and defendant argues that the
city of Kearney had no express power to make such a
regulation. This proposition is clearly at variance with
the language copied from the charter, which grants to the
city in express terms power to make and prescribe regu-
lations for the location of stock-yards, where offensive
matter is kept or is likely to accumulate.

It is further argued: "The ordinance was void, because
maintaining stock-yards within the prescribed limits was
made illegal even though maintained in a perfectly legal
manner, and no distinction was made between such as
might be thus *properly* maintained and those that might
be as a matter of fact a *nuisance.* In other words, the
ordinance makes illegal that which might otherwise be
perfectly legal; that is to say, it makes illegal the main-
taining of the stock-yards though maintained in a manner
not open to criticism." These and other reasons are urged
to show that the regulation is an unreasonable and uncon-
stitutional invasion of private rights and of private prop-
erty. Apparently the ordinance is on its face a sanitary
measure adopted by the city for the purpose of promoting
public health, comfort and welfare. The exercise of the
police power for such a purpose is an essential function
of municipal government and does not necessarily await

the exigencies of an existing nuisance. When opportunely and wisely exercised, the police power generally prevents nuisances. In discussing an ordinance forbidding the distribution of handbills in public places, a custom not necessarily a nuisance *per se,* this court in an opinion by Pound, C., said: "The ordinance in question is manifestly a police regulation intended to further the public health and safety by preventing the accumulation of large quantities of waste paper upon the streets and alleys, which might occasion danger from fire, choke up and obstruct gutters and catch-basins, and keep the streets in an unclean and filthy condition. A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not invalid simply because it may affect incidentally the exercise of some right guaranteed by the constitution. In all matters within the police power some compromise between the exigencies of public health and safety and the free exercise of their rights by individuals must be reached." *In re Anderson,* 69 Neb. 686.

The right to make regulations for the public health and welfare may be asserted directly by the legislature or delegated to municipalities. *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549. When the latter method is adopted, as in the present case, a city ordinance stands on the same footing as a statute. Within the jurisdiction of the city government it has the force of law, and can only be held void for reasons which would justify a court in declaring a statute invalid. *In re Anderson,* 69 Neb. 686. Like a statute, an ordinance passed in the exercise of police power properly delegated to a city is presumably valid, and "the courts will not interfere with its enforcement until the unreasonableness or want of necessity of such measure is made to appear by satisfactory evidence." *Peterson v. State,* 79 Neb. 132. This court in an opinion by Judge Barnes said: "All property in this state is held subject to rules regulating the common good and the general welfare of our people. This is the price of our ad-

vanced civilization, and of the protection afforded by law to the right of ownership and the use and enjoyment of the property itself. Rights of property, like other social and conventional rights, are subject to reasonable limitations in their enjoyment, and to such reasonable restraints and regulations by law as the legislature, under the governing and controlling power vested in them by the constitution, may think expedient." *Wenham v. State,* 65 Neb. 394. The supreme court of South Dakota recently held that a city, when expressly authorized by statute, may exclude stock-yards from a residence locality specifically defined by ordinance instead of attempting to regulate them within the district described. *Town of Colton v. South Dakota Central Land Co.,* 126 N. W. (S. Dak.) 507. The reasonableness of such an ordinance, however, is a proper subject of judicial inquiry. *Chicago, B. & Q. R. Co. v. State,* 47 Neb. 549; *Halter v. State,* 74 Neb. 757; *Iler v. Ross,* 64 Neb. 710. The test of the validity of such regulations is "whether they have some relation to the public health or public welfare, and whether such is, in fact, the end sought to be attained." *Smiley v. MacDonald,* 42 Neb. 5. A later definition is: "The test in such cases is whether the regulation in question is a *bona fide* exercise of the police power or an arbitrary and unreasonable interference with the rights of individuals under the guise of police regulation." *In re Anderson,* 69 Neb. 686; *Wenham v. State,* 65 Neb. 394. When thus tested, is the ordinance under which defendant was convicted void?

Some of defendant's employees testified that the stock-yards were in good condition and were properly managed when the ordinance was passed, though generally admitting that offensive conditions had existed at times. It was also testified that accumulated matter had been removed once or twice a year, and that the surface of the ground had been raised and the drainage improved by the use of cinders, sand, stone and brickbats. One of the witnesses for defendant further testified in effect that a place on or near defendant's right of way five blocks east of the pres-

ent site would be outside of the territory from which the stock-yards were by the ordinance excluded, but that the people there would object to that location, and to avoid trouble it would be necessary, if the regulation is enforceable, to select a site outside of the city—a distance of a mile and a half. He further stated that the latter location would require 1,200 feet of additional track and an expenditure of from $4,000 to $6,000.

On behalf of the state a number of witnesses residing in the vicinity gave testimony tending to prove in substance the following facts: The stock-yards had been located in a residence neighborhood within five blocks of the principal street of the city. The natural surface of the ground was low, and occasionally stagnant water collected there. The raising of the surface did not entirely remedy the defect. In addition to the use of the grounds for shipping stock, hog-buyers were permitted to use them constantly for feeding purposes. The yards were frequently in a bad condition. Offensive matter was allowed to accumulate, and it emitted noisome and nauseating odors which entered dwelling houses in the neighborhood or interfered with the ventilation thereof. The trial court evidently believed testimony of this nature, and it indicates that the police regulation in question had some relation to public health or public welfare, and that such was in fact the end sought to be attained, when the ordinance and the presumption in favor of its validity are considered.

It was not satisfactorily shown that the site within five blocks of the present location was in a residence portion of the city, or that it would be inconvenient or otherwise unsuitable, or that it would require the condemnation of additional land for railway purposes. Neither was it shown what it would cost to make the change, nor that additional tracks would be required. The general statement of a witness that the people there would object to such a location, without disclosing the nature of their objections or facts showing their right to make them, is not alone a sufficient reason for rejecting it or for con-

cluding that the sanitary measure in question was unreasonable.

The record does not show the trial court was in error in holding it had not been satisfactorily shown that the regulation was an arbitrary or unreasonable interference with the rights of defendant under the guise of police regulation. On the entire record the ordinance was properly upheld, and the judgment is

AFFIRMED.

REESE, C. J., not sitting.