[L. A. No. 7822. In Bank.—February 27, 1925.]

HECTOR N. ZAHN et al., Petitioners, v. BOARD OF PUBLIC WORKS OF THE CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

[1] MUNICIPAL CORPORATIONS — ZONING ORDINANCES — EXERCISE OF POLICE POWER.—The enactment by a municipality of an ordinance, pursuant to a general comprehensive plan, based upon considerations of public health, safety, morals, or the general welfare, applied fairly and impartially, which ordinance regulates, restricts and segregates the location of industries, the several classes of business, trade, or calling, and the location of apartment or tenement houses, club-houses, group residences, two-family dwellings, and the several classes of public and semi-public buildings, is a valid exercise of the police power.

[2] ID.—INCLUSION OF PROPERTY IN ZONE — DETERMINATION OF.—In this proceeding in mandate to compel the issuance of a permit for the construction of a business building upon property restricted by a zoning ordinance to dwellings, tenements, hotels, and similar uses, it is held that the findings of the referee do not show that the inclusion of the property in that section of the zoning ordinance was arbitrary, unreasonable, and discriminatory, nor

---

1. Validity of ordinance prohibiting carrying on business in residential district, note, Ann. Cas. 1914A, 132.

Validity of ordinance regulating location of construction of retail stores, note, Ann. Cas. 1915A, 294.

Creation by statute or ordinance of restricted residence districts from which business buildings are excluded, notes, 19 A. L. R. 1395; 33 A. L. R. 287. See, also, 18 Cal. Jur. 858–870.

that the boulevard on which the property is situated is better adapted for business than for residential purposes.

[3] Id.—Residence and Business Property — Validity of Zoning Ordinance.—A zoning ordinance is not void because certain property is zoned for residential uses, while business structures are permitted in other localities within the city similarly situated, where the purpose of the particular ordinance is to avoid residential property on one boulevard abutting upon business property on another avenue.

[4] Id.—Inclusion of Property in Certain Zone—Depreciation of Value.—The fact that the inclusion of certain property in a certain zone rather than in another depreciates its value is not of controlling significance, as every exercise of the police power is apt to affect adversely the property interest of somebody.

[5] Id.—Enabling Act of 1917.—The provisions of the zoning Enabling Act of 1917 (Stats. 1917, p. 1419), concerning the conservation of property values, have reference to the property value in the district as a whole and not to any particular piece of property.

[6] Id.—Past Uses—Discrimination.—The fact that the city council in the passing of a zoning ordinance did not attempt to remold the past development of the district has no tendency to show discrimination against property to be developed in the future.

[7] Id.—Power to Zone—Established Districts—The power of a city council to zone is not limited to the protection of established districts.

[8] Id.—Distinction Between Types of Buildings. — There is an obvious distinction between the type of buildings which a zoning ordinance permits to be erected in a certain zone such as dwellings, tenements, hotels, and buildings for similar uses, and a business block which is not permitted in said zone, such district being a *quasi*-residential district, and its character is not destroyed by the mere fact that the occupants of the residences permitted therein may keep offices for the transaction of professional business in their homes; and such classification of uses is not inherently discriminatory.

[9] Id.—Validity of Zoning Ordinance—Discretion.—Where it does not appear, *prima facie*, from the undisputed and admitted facts that a zoning ordinance in its application and its consequences is unreasonable, the courts are foreclosed from substituting their

8. See 18 Cal. Jur. 864.
9. See 18 Cal. Jur. 861.

judgment for the legislative judgment that the purpose and perfection of the ordinance in question had reasonable relation to the general welfare of the community.

[10] ID.—EXERCISE OF POLICE POWER—LEGISLATIVE DISCRETION—PRESUMPTION.—Where a given situation admittedly presents a proper field for the exercise of the police power, the extent of its invocation and application is a matter which lies very largely in legislative discretion; and every intendment is to be made in favor of zoning ordinances and courts will not, except in clear cases, interfere with the exercise of the power thus manifested.

(1) 12 C. J., p. 922, n. 68.   (2) 12 C. J., p. 932, n. 33.   (3) 12 C. J., p. 932, n. 36.   (4) 12 C. J., p. 931, n. 31.   (5) 28 Cyc., p. 736, n. 47.   (6) 28 Cyc., p. 736, n. 47.   (7) 28 Cyc., p. 736, n. 47. (8) 12 C. J., p. 932, n. 34.   (9) 12 C. J., p. 934, n. 46.   (10) 12 C. J., p. 934, n. 48.

APPLICATION for a Writ of Mandate to compel the issuance of a permit for the construction of a building. Writ denied.

The facts are stated in the opinion of the court.

Hill & Morgan for Petitioners.

Jess E. Stephens, City Attorney, and Lucius P. Green, Assistant City Attorney, for Respondents.

LENNON, J.—The petitioners presented to this court in the first instance a petition for a writ of mandate, commanding the Board of Public Works of the City of Los Angeles to issue a permit for the construction of a business building upon the property of the petitioners, situate on the south side of Wilshire Boulevard, between Cochran Street and Dunsmuir Avenue, in said city. Thereafter an alternative writ was issued by this court and the proceedings transferred to the district court of appeal, second appellate district, division one, for hearing and decision. In that court, after issues joined upon the petition and the answers thereto, a referee was appointed pursuant to stipulation of all of the parties, to take testimony and return to the court his findings of fact. A transfer of the cause to this court, after hearing and determination by the court of appeal, brought to this court the entire record, which

included the findings of the referee, and they therefore will be accepted and approved by this court as if they were returned here in the first instance.

The petition for the writ attacks two ordinances of the City of Los Angeles, viz.: Ordinance No. 42666 (New Series), amended by Ordinance No. 44668 (New Series), otherwise known as the general and comprehensive zoning ordinance of said city, and Ordinance No. 46250 (New Series), which provides for the establishment of a set-back line on Wilshire Boulevard, between Bronson Avenue and the West City boundary of the City of Los Angeles.

The general and comprehensive zoning ordinance, Ordinance No. 42666 (New Series), covers practically the entire area of the city's sphere of activities and is entitled, "An ordinance providing for the creation in the City of Los Angeles of five (5) zones, consisting of various districts, and prescribing the classes of buildings, structures and improvements in said several zones and the use thereof; defining the terms used herein, prescribing the penalty for the violation of the provisions hereof, and repealing certain ordinances." The five zones were designated respectively as zones "A," "B," "C," "D" and "E." By said ordinance, it is provided that in zone "A" no building shall be erected for any other use than that of a "single-family" dwelling. It is provided that in zone "B" no building shall be erected "which is designed, arranged or intended to be occupied or used for any purpose other than dwellings, tenements, hotels," and similar uses. In zone "C" it is provided that no building shall be erected "which is designed, arranged or intended to be occupied or used for any purpose other than a store or shop for the conduct of a wholesale or retail business," and like uses. In zone "D" it is provided by the ordinance that no building shall be erected therein which is designed or intended to be occupied or used for other than variously designated trades, occupations, and industries such as chlorine manufactories, glue factories, etc. In zone "E" the property may, by the provisions of the ordinance, be devoted to any lawful use.

The said general comprehensive zoning ordinance, Ordinance No. 42666 (New Series), was adopted by the city council on the eighteenth day of October, 1921, at which time the tract of land on which is located the property of the

petitioners herein was outside of the limits of the City of Los Angeles. On February 28, 1922, by proceedings duly had, said tract was annexed to the City of Los Angeles. On the twenty-first day of September, 1922, the city council by an ordinance known as Ordinance No. 44668 (New Series), amended said Ordinance No. 42666 (New Series), and thereby included a considerable area lying along Wilshire Boulevard and including the petitioners' property within zone "B" from which zone, as previously indicated, stores are excluded. By the same amendment the city council placed a certain region lying along La Brea Avenue within zone "C," within which zone stores of various kinds are permitted.

Thereafter the petitioners filed an application with the city council requesting that the council declare an exception to the restrictions of said ordinance with respect to the property of the petitioners and adopt an ordinance permitting the construction and erection of a business building by the petitioners upon their property. The request of the petitioners was referred by the city council to the public welfare commission of the council for investigation and report with the result that the commission reported that "we believe that Wilshire Boulevard is destined to become a show street when widened and beautified as contemplated and the encroachment of business upon this boulevard is at this time unnecessary and would be a great detriment to the future residential development of this thoroughfare and we therefore recommend that the request be denied and filed." This report of the public welfare commission was on July 19, 1923, unanimously adopted by the city council.

The petitioners on the twenty-fifth day of July, 1923, made application to the Board of Public Works asking that a permit be issued allowing them to construct upon their said property on Wilshire Boulevard a one-story business building. The Board of Public Works refused to issue the permit upon the ground that the provisions of Ordinance No. 42666 (New Series), as amended by Ordinance No. 44668 (New Series), forbade the erection in zone "B" of that class of building for which a permit was sought and that by section 12 of said ordinance, the Board of Public Works was forbidden to issue a permit for the erection, construction, or establishment of any building in any of

the zones contrary to the provisions of said ordinance. The permit was refused upon the further ground that the plans and specifications for said building filed with the application showed that the building was not proposed to be set back a distance of fifteen feet from the street line of Wilshire Boulevard as provided in Ordinance No. 46250, N. S.

In view of the conclusion which we ultimately reach concerning the validity of the ordinance prohibiting the petitioner from building a business building in the zone in question, it will not be necessary for us to decide at this time the question as whether or not the particular set-back ordinance in question here is valid.

Two contentions are made by the petitioners against the validity of Ordinance No. 42666, N. S., known as the general and comprehensive zoning ordinance, as amended by Ordinance No. 44668, N. S., which amendment placed petitioners' property in zone "B," viz.: (1) that the enactment and enforcement of an ordinance by a municipality which divides a city into zones and prohibits the construction in certain zones upon private property of buildings for business purposes without regard to whether the particular use is a nuisance *per se* or may become a nuisance by reason of the location of the business or the manner and the method in which it is conducted, constitutes an unlawful exercise of-the police power; and (2) that the ordinance in the instant case is unreasonable and discriminatory and contravenes the provisions of the zoning Enabling Act of 1917, which provides that the council, in designating the class of use to be permitted in each district, "shall give reasonable consideration, among other things, to the character of the district, its peculiar suitability for particular uses, the conservation of property values and the direction of business development in accord with a well considered plan." (Stats. 1917, p. 1419.)

[1] The first contention of petitioners was involved in the case of *Miller* v. *Board of Public Works, ante,* p. 477 [334 Pac. 381]. That case involved the question of whether or not zoning of any character, comprehensive, or otherwise, save and except for the purpose of prohibiting nuisances or "near-nuisances" was a valid exercise of the police power. That case has this day been decided and it is held therein that an enactment by a municipality of an ordinance, pur-

suant to a general comprehensive zoning plan, based upon considerations of public health, safety, morals, or the general welfare, applied fairly and impartially, which ordinance regulates, restricts, and segregates the location of industries, the several classes of business, trade, or calling and the location of apartment or tenement houses, club-houses, group residences, two-family dwellings, and the several classes of public and semi-public buildings, is a valid exercise of the police power. (See, also, *In re Opinion of Justices,* 234 Mass. 597 [127 N. E. 525]; *State ex rel. Carter* v. *Harper,* 182 Wis. 148 [33 A. L. R. 269, 196 N. W. 451]; *State ex rel. Civello* v. *New Orleans,* 154 La. 271 [33 A. L. R. 260, 97 South. 440]; *Ware* v. *City of Wichita,* 113 Kan. 153 [214 Pac. 99]; *City of Des Moines* v. *Manhattan Oil Co.,* 193 Iowa, 1096 [23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 921]; *Spector* v. *Building Inspector of Milton* (Mass.), 145 N. E. 265.)

A consideration of the findings of the referee in the instant case is necessary to a determination of the second contention of the petitioners; i. e., that the particular ordinance in controversy is so unreasonable and discriminatory as to be beyond the purview of the police power.

The findings of the referee relative to the situation of the petitioners' property and the conditions existing upon Wilshire Boulevard and the territory adjacent thereto are as follows:

"That at the time of the adoption and approval of each and all of the ordinances hereinbefore referred to and at the present time, the aforesaid Wilshire Boulevard was and is a main thoroughfare extending through a portion of the City of Los Angeles to and through a large portion of the County of Los Angeles, and from there to other cities and municipalities, and to the Pacific Ocean in the City of Santa Monica; that said boulevard was and is a main artery for a tremendous amount of automobile and vehicular traffic between the said City of Los Angeles and said other communities; that at all hours of the day and during most of the hours of the night, said boulevard is filled with traffic of every description, including autmobile trucks and other vehicles engaged in commerce between said communities, and engaged in other commercial activities. That said Wilshire Boulevard is one of the main arteries of travel of the City

of Los Angeles. That said automobile traffic creates a great deal of noise, confusion and congestion along said Wilshire Boulevard where the property of petitioners is situated and for long distances in either direction from said property. That there is not located along Wilshire Boulevard and within one mile in either direction from said property any dwelling house, tenement, hotel, lodging or boarding house, church, private club, public or semi-public institution of any kind, railroad station or other structure or improvement permissible under B Zone, except that there is located on a lot on Wilshire Boulevard near said property an old farm house. That there are several real estate offices located along Wilshire Boulevard near said property; that on the southeast corner of Cochran Avenue and Wilshire Boulevard across the street from the property of the petitioners there is a brick store building which at the time of passage of said zoning ordinance was occupied by a grocery store and a market; that on the south side of Wilshire Boulevard at the corner of Wilshire and Mansfield Avenue, six blocks east of the property of petitioners, there was at said time located a fruit stand; that at the intersection of La Brea Street and Wilshire Boulevard there is located a two-story brick business block; on the southeast corner of Wilshire and La Brea there is located a real estate office; that on the northeast corner of Wilshire and La Brea streets there is located an oil station with a real estate office adjoining; that on the property of petitioners there is located a real estate office. That all of said buildings above referred to were located on said property at the time said zoning ordinance went into effect, except the brick building on the southwest corner of Wilshire and La Brea.

"That the property of the petitioners described in Paragraph II of said petition would have a market value of from 100 per cent to 200 per cent greater than it now has if said property could be used for business purposes.

"That as to the property, fronting on said Wilshire Boulevard which is restricted against use for business purposes by deed, the effect of placing property of petitioners and other property unrestricted by deed along Wilshire Boulevard in Zone C would be to depreciate the market value of said property so long as said deed restrictions should remain in effect.

"That under the provisions of said ordinance, the property fronting on said Wilshire Boulevard at the intersection of what is known as La Brea Avenue and on either side thereof for a distance of one block, has been selected, designated and placed within what in said ordinance is referred to as a 'C Zone' district, wherein may be constructed buildings and structures for business purposes; that the property of the said petitioners is located in a tract which adjoins said property so placed, as aforesaid in said C Zone. That said La Brea Avenue has been dedicated as a through street from Hollywood on the north to several miles south of Wilshire Boulevard. That said La Brea Avenue is improved from Hollywood on the north to three or four blocks south of Wilshire Boulevard on the south, with a paved street, said pavement being about three or four miles long; and that southerly from said point said street was, at that time of the passage of the said zoning ordinance, dedicated, but that no improvement had been made thereon and that said street was at said time impassable, that the property fronting on La Brea Avenue to the north of Wilshire Boulevard for a distance of approximately two miles is almost entirely unimproved and undeveloped, and that Pico Street is a street in the City of Los Angeles running east and west approximately a mile south of Wilshire Boulevard; that the property fronting on La Brea Street from Wilshire Boulevard to Pico Boulevard is entirely unimproved and undeveloped.

"That the property of said petitioners is as well adapted to business purposes and uses as is said other property along La Brea Street.

"That except for a few real estate offices, none of the buildings on said Wilshire Boulevard within a mile from either direction from the property of the said petitioners are set back from the street line of said Wilshire Boulevard.

"That petitioners have taken every step and means provided in said ordinance and within their power under the laws of the ordinances of the City of Los Angeles to obtain relief from the legislative body of the said City of Los Angeles, and have heretofore filed an application with the City Council of said city calling the attention of said City Council to the conditions existing upon said boulevard as herein set forth, and requesting that the said City Council, pur-

suant to Section 4 of said ordinance, declare an exception to the restrictions of said ordinance with respect to the property of said petitioners, and to, pursuant to the provisions of said Section 4 of said ordinance, adopt an ordinance permitting the construction and erection of a business building which the said petitioners propose to construct and erect upon their property; that said City Council, at a regular meeting thereof held on the 19th day of July, 1923, acted upon the said request of said petitioners by unanimously adopting the report of the Public Welfare Commission of the Council relative to said request, which said report is as follows: (The referee's report here quotes said committee report, which closed as follows: 'your committee desires to state that we believe that Wilshire Boulevard is destined to become a show street when widened and beautified as contemplated and the encroachment of business upon this boulevard is at this time unnecessary and would be a great detriment to the future residential development of this thoroughfare and we therefore recommend that the request be denied and filed.')

"That prior to the adoption of said Ordinance No. 44668, New Series, by which ordinance section 2–a–56 was added to said Ordinance No. 42666, New Series, as aforesaid, making the district in which the petitioners' property is located a part of B Zone of said city, the said district where said property is located had not been zoned and no restrictions by law had been established preventing said property from being used for business purposes; that before the adoption of said Ordinance No. 44668, New Series, as aforesaid, the City Planning Commission of the City of Los Angeles had drafted a map and had recommended to the said City Council of said city the adoption of said map as Part No. 7 of the zone map of said city by which said property of the said petitioners and property in that vicinity was shown to be restricted against use for business; that thereupon, to-wit, on the 5th day of August, 1922, the petitioners herein and other property owners petitioned the said City Council protesting against the placing of said property fronting on said Wilshire Boulevard in Zone B; that on the 7th day of August, 1922, the said City Council of said city, at a regular meeting, considered the protest of said petitioners and others, and thereupon the following proceed-

ings were had: . . . '' (The referee's report here sets forth those proceedings, wherein the city council sustained the protest and voted to place in Zone C the property fronting on Wilshire Boulevard, from La Brea Avenue to westerly city limits. But the referee's report further shows that thereafter the city council received certain communications from citizens protesting against the placing of said territory in Zone C; that on the seventeenth day of August, 1922, after considering said protests, the city council reconsidered its action of August 7th.)

The referee further finds:

''That Pico street is a street in the City of Los Angeles running east and west and traversing said city for almost its entire length and running westerly through the City of Los Angeles and a part of the County of Los Angeles to the Pacific Ocean. That said Pico street has a double track street car line almost to Rimpau Boulevard. That said Pico street is improved with pavement for practically its entire length, to the ocean, and is also a street on which there is a great deal of automobile traffic, but that the automobile traffic on said Pico street is not as heavy as on said Wilshire Boulevard. That said Pico street and the property abutting thereon for a considerable distance west of Rimpau Boulevard is lower in elevation than said Wilshire Boulevard and the property abutting thereon. That west of Rimpau Boulevard there are fewer business houses and more residences fronting on Pico street than there are fronting on Wilshire Boulevard. That included in the term 'business houses' on both Pico street and Wilshire Boulevard are real estate offices. That said Pico street for its entire length inside the City of Los Angeles has been placed in Zone C. That said Pico street easterly from said Rimpau Boulevard is well built up with business houses.

''That Wilshire Boulevard easterly from Rimpau for a distance of approximately three miles was originally built up with high class residences. That before the adoption of said zoning ordinance a number of these residences had been converted into restaurants, lodging houses and tea rooms. That there are on said Wilshire Boulevard in the course of construction at the present time easterly of said Rimpau Boulevard four or five large apartment houses; that the Ambassador Hotel occupies a tract of land fronting on said

Wilshire Boulevard about two miles east of Rimpau Boulevard, and that there are located in said Ambassador Hotel various shops and merchandising establishments; that said hotel is located several hundred feet south of said Wilshire Boulevard. That on the corner of Wilshire Boulevard and Vermont Avenue, a distance of approximately two miles east of said Rimpau Boulevard, there is now in course of construction a large businesss block. That at the intersection of Wilshire Boulevard and Western Avenue, a distance of about one mile east of said Rimpau Boulevard, there are one brick business building and two real estate offices. That Western Avenue and Vermont Avenue aforesaid have been placed in Zone C; that Cochran Avenue on which the property of petitioners abuts is, southerly from Wilshire Boulevard, a paved and well traveled street, and that said Cochran Avenue does not extend north of said Wilshire Boulevard. That there is no car line on Wilshire Boulevard for its entire length.

"That both Pico Boulevard and Wilshire Boulevard westerly from Rimpau Avenue traverse sections of the City of Los Angeles which at this time are but sparsely built up and inhabited, but which are in the course of rapid upbuilding and development. That within the last two years throughout the City of Los Angeles there has been a large amount of development and building, of all kinds.

"That all the property covered by Part No. 7 of the Zone Map and the extension thereof to the city limits of the City of Los Angeles, so far as the same has been subdivided is in the course of an extremely rapid development, and that a great many residence buildings have been and are now being erected thereon, except as hereinabove in these findings stated.

"That there is in the City of Los Angeles a Department of the city known as the City Planning Commission and that G. Gordon Whitnall is and has been since the creation of said commission in 1920 the Secretary Consultant of said Commission; that immediately upon its creation said City Planning Commission undertook a study of the entire City of Los Angeles, district by district, for the purpose of enacting a comprehensive zoning plan throughout the said City. That in each district hearings were had and the proposed zone map was posted and public hearings had; that

thereafter each of said maps was considered by said City Planning Commission and presented to the City Council with the recommendation of City Planning Commission; that thereafter the Council adopted the ordinances covering the zoning of property in said City of Los Angeles, covering the districts included in said maps; that the zoning maps covering the property in question in this action were prepared and adopted and presented to the Council by the said City Planning Commission, pursuant to the above plan; that the proceedings before the City Council with respect to the zoning of the property involved in this action are such as have been heretofore in these findings set forth in full."

[2] These findings of the referee do not in our opinion sustain the contention of the petitioners that the inclusion of that portion of Wilshire Boulevard in which their property is situate in zone "B" was arbitrary, unreasonable, and discriminatory. On the contrary, we are satisfied that the council did take into consideration the character of the boulevard and that its designation of the uses for which property fronting on Wilshire Boulevard might be devoted was appropriate and proper.

Succinctly stated, the objections urged by the petitioners as showing an abuse of the discretion of the council are (1) that Wilshire Boulevard is better adapted to business than to residential purposes, (2) other adjacent territory is zoned for business which is not better suited for business than is Wilshire Boulevard, (3) the value of petitioners' property will be depreciated if it is retained in zone "B," (4) property devoted to business uses at the time of the adoption of the ordinance are permitted to continue, (5) the territory in which petitioners' property is situate is not an established residential district, and (6) there is no natural, intrinsic, or constitutional distinction between the classes of uses permitted in zone "B" and those prohibited.

The findings of the referee do not show that Wilshire Boulevard is better adapted for business than for residential purposes. True, the finding of the referee is that Wilshire Boulevard is "a main thoroughfare extending through a portion of the City of Los Angeles to and through large portions of the County of Los Angeles, and from there to other cities and municipalities, and to the Pacific Ocean in the City of Santa Monica" and is "a main artery for a

tremendous amount of automobile and vehicular traffic between the said City of Los Angeles and said other communities." This is not necessarily proof that the boulevard is fit only for business. The requirements of a traffic boulevard are that traffic shall be kept moving, whereas it is common knowledge that on business streets traffic is retarded. This naturally arises from the necessity of stopping and parking on business streets. The inevitable result would be that if Wilshire Boulevard should become a business street, it would lose much of its usefulness as a main artery for traffic between Los Angeles and the neighboring cities and municipalities. The fact that there is a large volume of traffic upon Wilshire Boulevard which necessarily must be productive of incidental noise and confusion is not conclusive that said boulevard is clearly unadapted to use for residential purposes of the character contemplated in zone "B." The circumstance that many very large and expensive apartment houses have already been constructed upon this boulevard is in itself substantial evidence that the boulevard is not unadapted to use for such purposes.

The council in designating the class of use to be permitted in the various districts was required to consider among other things "the character of the district, its peculiar suitability for particular uses." The report of the referee that the region along said boulevard which had been included in zone "B" was largely unoccupied territory, there being within that area but one store building used for a grocery store and market erected prior to the inclusion of the tract in zone "B," and few real estate offices and one oil station, shows that the region was not unsuitable for residential purposes.

Moreover, the fact, as found by the referee, that aside from the fourteen blocks along said Wilshire Boulevard westerly of Rimpau Street, all other subdivided frontage along said boulevard has been restricted against business by the voluntary act of the subdividers, would tend to negative petitioners' contention that Wilshire Boulevard is particularly suited for business.

[3] The objection to the ordinance as unjust and discriminatory because of the fact that property in adjacent territory is included in zone "C" is not well taken. The petitioners attack the ordinance in this particular upon

three grounds: (1) that property fronting on La Brea Avenue, which intersects Wilshire Boulevard at right angles close to petitioners' property, is zoned for business; (2) that Pico Street, which runs parallel to Wilshire Boulevard and through the same general territory, is likewise zoned for business, and (3) that Wilshire Boulevard for a block on each side of La Brea Avenue is zoned for business. We are of the opinion that the placing of these properties in zone "C" is supported by valid reasons. With reference to the contention that it was unreasonable to zone La Brea Avenue for business uses and Wilshire Boulevard for residential uses, it appears from the report of the referee that at convenient intervals along Wilshire Boulevard, streets intersecting Wilshire Boulevard at right angles have been zoned for business. Thus Vermont Avenue, which is approximately three miles from La Brea Avenue and Western Avenue which is approximately two miles from La Brea Avenue, have been zoned to business uses. This was done in order to serve the business needs of the adjacent residential territory. It was therefore but natural and logical in the carrying out of a harmonious plan that the council should zone La Brea Avenue for business purposes, since it was a main thoroughfare crossing Wilshire Boulevard at right angles and was approximately two miles from Western Avenue. There was thus provided at convenient and reasonable intervals adequate and convenient business districts "to serve the reasonable immediate needs of each particular neighborhood." (*Ware* v. *City of Wichita, supra.*)

As to the contention that discrimination was shown by the council in placing Pico Street in zone "C," the findings of the referee show that Pico Street is well adapted for business, for the reason that it runs through a lower and less attractive territory than Wilshire Boulevard and is served by a double street-car line.

It is apparent that the reason for the inclusion of two blocks in Wilshire Boulevard where La Brea Avenue intersects it in zone "C" was to avoid a situation which would otherwise have resulted of placing business property and residential property within the same block. In short, it was thus zoned in order that residential uses on Wilshire Boulevard would not be forced to abut upon business uses on La Brea Avenue.

In this situation it may not be said that the ordinance is void for the reason that petitioners' property is zoned for residential uses, whereas business structures are permitted in other localities within the city similarly circumstanced as the property of the petitioners. As was said in *Brown* v. *City of Los Angeles,* 183 Cal. 783 [192 Pac. 716] : "The mere fact that outside of the . . . district there was other property similar in nature and character would not justify the court upon ascertaining that fact to substitute its judgment for the legislative judgment. The boundary line of a district must always be more or less arbitrary, for the property on one side of the line cannot, in the nature of things, be very different from that immediately on the other side of the line." (See, also, *Hadacheck* v. *Los Angeles,* 165 Cal. 416 [L. R. A. 1916B, 1248, 132 Pac. 584].)

Thus viewed, the ordinance in the instant case is not an arbitrary attempt of the city authorities to discriminate between the uses of property in one territory and the use of property permitted in another of similar description, but, on the contrary, the districts created by the ordinance and its various amendments appear to be established by a rational general rule.

[4] The fact that the inclusion of the petitioners' property in zone "B" rather than in zone "C" depreciates its value is not of controlling significance. Every exercise of the police power is apt to affect adversely the property interest of somebody. (*Spector.* v. *Building Inspector of Milton* (Mass.), 145 N. E. 265, 267.) [5] The provisions of the Enabling Act concerning the conservation of property values have reference to the property value in the district as a whole and not to any particular piece of property. It is to be noted in this behalf that the finding of the referee is that the value of other property along Wilshire Boulevard which has been restricted against uses for business purposes by deed will be depreciated if the tract of land in which petitioners' property is located be included in zone "C."

[6] As to the objection that the ordinance was not retrospective but permitted the continuance of existing uses, it will suffice to say that for the purpose of zoning it is not necessary that existing uses shall be removed. (*Spector* v. *Building Inspector of Milton, supra.*) The ordinance was enacted with the purpose of directing the present and future develop-

ment of the city and no attempt was made to remold its past development. To have required, preliminarily to an enactment for future development, that all past development, not in harmony therewith, should be removed might be impractical. That the council did not attempt such a task has no tendency to show discrimination against property to be developed in the future.

[7] The power of the city council to zone is not limited in our opinion to the protection of established districts. To so hold would be to defeat in a large measure the very purpose of zoning which is to control future development in the best interest of the city. Zoning in its best sense looks not only backward to protect districts already established but forward to aid in the development of new districts according to a comprehensive plan having as its basis the welfare of the city as a whole.

[8] With reference to the contention that the class of uses permitted in zone "B" is based upon no intrinsic, natural, or constitutional distinction, it will suffice to say that there is an obvious distinction between the type of buildings which the ordinance permits to be erected in zone "B" and a business block which is not permitted in said zone. It is apparent that zone "B" provides for what may, in a manner of speaking, be called a *quasi*-residential district the character of which is not destroyed by the mere fact that the occupants of the residences permitted therein may keep offices for the transaction of professional business in their homes. Such classification of uses is not inherently discriminatory and the creation of and the necessity for such classification is a matter largely within the legislative judgment of the city council.

Incidentally the point is made in opposition to the writ to the effect that the provisions of the ordinance in question purporting to authorize and empower the city council upon request of a property owner within a given zone to except his property from the operation of the ordinance as applied to that zone is unreasonable, discriminatory, and makes provision for arbitrary action, without laying down any rule for the guidance or determination of the council's action. We do not deem it necessary to decide this question, for the reason that the provision referred to is clearly severable from the other provisions of the general ordinance,

195 Cal.—33

and if that provision should be held to be invalid, such holding would leave the remainder of the ordinance unimpaired.

It is not claimed that the council in arriving at the result which it did in the enactment of the ordinance in question acted unfairly or without due deliberation and without notice to all who might be interested in the subject matter of the ordinance. It will be noted, as previously indicated, that the findings show that upon the creation of the city planning commission of the City of Los Angeles, a study was undertaken by the commission of the entire city, district by district, for the purpose of the enactment by the city council of a comprehensive zoning ordinance; that the maps of the proposed zones were posted and public hearings had; that such zone maps after due consideration were presented to the city council with the recommendation of the city planning commission; that in the instant case the petitioners were given an opportunity to be heard before the city council; and that the inclusion in zone "B" of the territory in which petitioners' property is located was made upon the recommendation of the public welfare commission of the city council, to whom the protest of the petitioners had been referred for investigation.

[9] That the zoning plan as adopted was fairly conceived and consummated is not questioned nor is it claimed that the manner and method of including and excluding certain properties therein and therefrom was arbitrary. And it not appearing, *prima facie,* from the undisputed and admitted facts that the ordinance in its application and its consequences is unreasonable, we are foreclosed from substituting our judgment for the legislative judgment that the purpose and perfection of the ordinance in question had reasonable relation to the general welfare of the community. (*Des Moines* v. *Manhattan Oil Co.,* 193 Iowa, 1096 [23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 921].) [10] It must be conceded that where a given situation admittedly presents a proper field for the exercise of the police power the extent of its invocation and application is a matter which lies very largely in legislative discretion. (*Carter* v. *Harper,* 182 Wis. 148 [196 N. W. 451]), and we are well satisfied that the weight of authority dealing with the subject of zoning may now be regarded as establishing that "every intendment is to be made in favor of zoning ordi-

nances, and courts will not, except in clear cases, interfere with the exercise of the power thus manifested." (See *Building Inspector of Lowell* v. *Stoklosa* (Mass.), 145 N. E. 262; *Dobbins* v. *Los Angeles*, 195 U. S. 223 [49 L. Ed. 169, 25 Sup. Ct. Rep. 18, see, also, Rose's U. S. Notes].) In *Miller* v. *Board of Public Works, supra,* it was said: "The courts are loathe to substitute their judgment as to the necessity for a particular enactment for the legislative judgment as to the need of such an enactment with reference to the exercise of the police power. A large discretion is vested in the legislative branch of the government with reference to the exercise of the police power. Every intendment is to be indulged by the courts in favor of the validity of its exercise and unless the measure is clearly oppressive it will be deemed to be within the purview of that power. It is only when it is palpable that the measure in controversy has no real or substantial relation to the public health, safety, morals or general welfare that it will be nullified by the courts."

It follows from what has been said, based upon the unchallenged and undisputed facts of the instant case, that the ordinance in controversy cannot be held to be an unreasonable and discriminatory exercise of the police power and that it must be held to be a valid enactment.

The writ is denied.

Lawlor, J., Richards, J., Myers, C. J., Shenk, J., Seawell, J., and Waste, J., concurred.

Rehearing denied.

All the Justices concurred.