The City of Omaha, a municipal corporation, appellee,
v. Henry C. Glissmann, appellant, Ninetieth Street
Realty Company, a corporation, and West Hills
Improvement Club, a corporation, interveners
and appellees.

39 N. W. 2d 828

Filed December 6, 1949. No. 32640.

*Winters & Winters,* for appellant.

*Edward F. Fogarty, Edward Sklenicka, James M. Paxson, Herbert M. Fitle,* and *Spier & Ellick,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This action was brought by the City of Omaha, a municipal corporation under home rule charter, to permanently enjoin Henry C. Glissmann from proceeding with the construction, maintenance, or operation of a tourist camp, trailer camp, or trailer park on lands leased by him from Gwyer H. Yates. The basis for the relief asked is that such use is contrary to and prohibited by the zoning ordinances of the city of Omaha which are applicable to the area which defendant had leased and on which he proposes to construct, maintain, and operate such tourist camp, trailer camp, or trailer park. A decree was entered by the trial court in favor of the city

and two interveners. These interveners will be more fully referred to later in the opinion. From this decree, which enjoined him from using or permitting the use of the premises he had leased from Gwyer H. Yates for the construction, maintenance, or operation of a tourist camp, trailer camp, trailer park, or any similar enterprise and directing him to remove therefrom all structures, fixtures, or equipment thereon usable only for such purposes, his motion for new trial having been overruled, the defendant appealed.

After this action had been filed by the city there were two petitions of intervention filed. The first was by the West Hills Improvement Club and the second by the Ninetieth Street Realty Company. Both of these interveners are Nebraska corporations and by the petitions of intervention sought the same relief as had been asked for by the city in its petition. The West Hills Improvement Club is a nonprofit corporation organized to promote and encourage the beneficial growth of the city of Omaha and of all territory adjacent thereto, especially that area west of the city limits. The members of this corporation all reside on or own real estate in the immediate vicinity of Ninetieth Street and Dodge Road. Ninetieth Street Realty Company is a corporation owning substantial real estate located generally southwest of the corner of Ninetieth Street and Dodge Road. This real estate is zoned as "1st Residence District" and intervener is engaged in improving, developing, and selling this real estate for residential purposes. Appellant contends that these parties had no right to intervene in this suit and that the trial court erred in holding that they were proper parties. While this question is immaterial, as the matter is properly before us on the city's petition, however, we think the ruling of the trial court was correct.

In Bangs v. Dworak, 75 Neb. 714, 106 N. W. 780, 5 L. R. A. N. S. 493, we said: "Injunction will issue to prevent the erection of buildings in violation of a munic-

ipal ordinance, though they are not nuisances per se, if the persons seeking such injunction show that their erection will work special or irreparable injury to them and their property." See Holzbauer v. Ritter, 184 Wis. 35, 198 N. W. 852, and Boehner v. Williams, 213 Iowa 578, 239 N. W. 545. The allegations of the petitions of intervention and the evidence offered in support thereof bring the interveners within the foregoing principle.

The record discloses that appellant, on October 14, 1939, leased a tract of land for use as a golf course and developed thereon the Indian Hills Golf Course. The land he leased was and is owned by Gwyer H. Yates and is described as "part of the Northeast Quarter of Section 22, Township 15, North, Range 12, East of the 6th P. M. in Douglas County, Nebraska, lying south of the south line of State Highway No. 30-S," with certain described tracts excepted therefrom. These exceptions are unimportant except for two tracts which were included in a later lease and which will hereinafter be more fully referred to. This lease, by its terms, expired on December 31, 1963, but had in it a provision whereby the lessor, at any time after the sixth year, could cancel it and recapture possession of the premises provided he had a valid sale of the entire premises or intended to subdivide the premises or a substantial part thereof. To cancel the lease the lessor was required to give the lessee a three month's notice prior to the first of any January and to pay him the sum as in the lease set forth, the amount depending upon the year in which cancellation, if made, took place. These amounts decreased substantially each year.

The whole of the lands covered by this lease were devoted to the golf course and appellant expended a very substantial sum in developing its use for that purpose. Realizing the danger of this cancellation provision which permitted cancellation and recapture on payment of a much smaller amount than the appellant had invested in the development of the golf course, the appellant, as

early as November 25, 1946, sought such a modification of this lease as would eliminate this provision. This ultimately resulted in a new lease being executed on November 8, 1947. The new lease superseded the old lease as of January 1, 1948. This new lease eliminated the cancellation provision, increased the fixed rentals, and included the two tracts already referred to. The one is tax lot No. 2, known as "the wooded hilltop," and contains about 4.81 acres. It lies in the golf course and some distance south of Dodge Road. The other is a tract of about 9.1 acres lying just south of Dodge Road and along the north side of the golf course, being just west of Eighty-seventh Street and running west to within 240 feet of Ninetieth Street.

Dodge Road, as it will herein be referred to, is State Highway No. 30-S which is Dodge Street to about Eighty-fourth Street, then northwest to intersect with Cass Street at about Eighty-seventh Street, and then west on what would be Cass Street if it were extended.

The appellant testified that prior to executing the new lease on November 8, 1947, he had the intention of using these two tracts for a trailer camp or park; that in July and August 1947 he, with his wife and grand-daughter, traveled some 6,500 miles and he expended some $600 in visiting trailer camps and parks to get information and data in regard thereto; and that in October 1947 he purchased eight small buildings at a sale held in connection with disbursing surplus war assets at the Mead Ordnance Plant to use in connection therewith. He paid $308 for these buildings. However, the evidence fully establishes the fact that he negotiated the new lease for the purpose of getting rid of the cancellation provision. The new lease is for a period of 20 years, terminating on December 31, 1967, and, with reference to such land as was not used in the golf course, provided: "* * * may be used by the Lessee as farm land or pasture, or for any other purpose which may be permissible under the provisions of the present

rural zoning ordinance of the City of Omaha applicable to said tract, * * *." At the time this lease was executed the area covered by the lease was zoned as "2nd Suburban District." This zoning authorized its use for the following purposes: "Trailer camps, trailer parks and tourist camps, subject to permit and regulation prescribed by ordinances of The City of Omaha."

Appellant testified that after he executed the new lease on November 8, 1947, but before he made application to the city on November 12, 1947, for a permit to establish, maintain, and operate a trailer and cabin camp on the tract of land lying adjacent to Dodge Road, he took two men and a tractor from the golf course and used them for about a week in cutting and grubbing out some trees and grading a road in the 4.81 acre tract known as "the wooded hilltop" in contemplation of its use as a trailer camp site; and that he also used two men for a day and a half on the tract adjacent to Dodge Road for the purpose of digging a cesspool, but that they did not complete the work.

On November 12, 1947, appellant filed his written application with the council of the city of Omaha asking permission, "* * * for the right to establish, maintain, and operate a 'Trailer and Cabin Camp,' with the trailer accomodations, the main object, with perhaps a few cabins to be added. This camp is to be erected on what is part of the Indian Hills Golf Course, which faces U. S. 30. A. or Dodge St road, from 84th St. to 90th street." A rough sketch of the proposed camp was submitted with the application showing the entrance thereto at about Eighty-seventh Street from the south side of Dodge Road. On November 18, 1947, the appellant's request for a permit was granted by the city council but made subject to the approval of the city's building department. This was done in order to make sure that the regulations for trailer camps would be complied with. This authorized permit was never actually issued because when appellant presented his

bond and plans, the latter having been prepared by the Rohrbough Engineering Company, to the building inspector of the city's building department he refused to accept them as the matter was then before the city council on a petition to reconsider the matter of its authorization.

On November 25, 1947, residents of this area filed a petition with the city asking the city council to reconsider its action of November 18, 1947, authorizing the permit. The council referred this petition to the city legal department but directed the clerk to notify appellant to cease all operations under the permit which it had authorized. This the clerk did by telephone on November 26, 1947, and also by letter dated December 6, 1947. On December 3, 1947, a petition was filed with the city planning commission asking its consideration of this matter at its meeting on December 5, 1947. On December 8, 1947, the city planning commission submitted its report in regard thereto to the city council. This report included a proposed amendment to the zoning ordinances making certain areas, including the territory herein involved, into a "1st Residence District." This would eliminate its use for the purpose of trailer parks, etc. Hearing on both the petition to reconsider and the proposed amendment was held on December 9, 1947, which hearing appellant attended. The petition to reconsider was not acted upon but the proposed amendment to the zoning ordinances was favorably received and set for final hearing on December 30, 1947. Notice of this hearing was published in the World Herald. On December 30, 1947, the proposed ordinance, amending the zoning ordinance and making this a "1st Residence District," was passed by the city council and, by its terms, became effective 15 days thereafter.

Sometime between the first and fifteenth of January, 1948, appellant had some grading done on these premises but almost all of the work done in getting it ready for use as a trailer camp or park was done in March, April,

and May, 1948, and appellant started to use it as such in May 1948.

Appellant's primary contention is that under these facts and circumstances he had established a nonconforming use of these premises as a trailer camp or park prior to the amendment by the city of its zoning ordinances relating thereto and that such right, being vested, the city could not deprive him thereof.

A zoning ordinance may not operate retroactively to deprive a property owner of his previously vested rights, that is, a zoning ordinance cannot deprive the owner of a use to which his property was put before the enactment of the ordinance. See Cassel Realty Co. v. City of Omaha, 144 Neb. 753, 14 N. W. 2d 600.

However, the purchase or leasing of lands with the intent to use them for a use then permissible under a zoning ordinance does not prevent the city from changing its zoning ordinance applicable thereto as such property is always held subject to the city's lawful exercise of the police power. See, West Bros. Brick Co. v. City of Alexandria, 169 Va. 271, 192 S. E. 881; 16 C. J. S., Constitutional Law, § 175, p. 541; and 11 Am. Jur., Constitutional Law, § 264, p. 1000.

Assuming, for the purpose of this discussion, that appellant was authorized by the city council's action of November 18, 1947, to use the tract adjacent to Dodge Road for trailer park or camp purposes, although no permit was ever actually issued to him, did he take any action thereunder prior to December 30, 1947, which vested him with rights of which he could not be deprived by the city's ordinance passed on that date changing the classification of this area to "1st Residence District"?

In this respect a new ordinance operates retroactively to require a denial of an application or to nullify a permit already issued, provided that the holder of the latter has not already engaged in construction or incurred obligations directly in relation thereto, when such application or permit seeks or grants a use no longer per-

mitted under the new ordinance. See Rice v. Van Vranken, 225 App. Div. 179, 232 N. Y. S. 506, and Trans-Oceanic Oil Corp. v. City of Santa Barbara, 85 Cal. App. 2d 776, 194 P. 2d 148.

However, after such purchase or lease, when a permit has been obtained to use the lands for a use then permissible under the zoning ordinances, a situation may arise when the city is estopped to deny the party the right to proceed thereunder. Some courts hold that, although a permit has been obtained, work commenced thereunder, and contracts entered into with reference thereto, the owner thereof is not vested with any rights by reason thereof which cannot be affected by an amendment of general application in a valid exercise of the city's police power unless there has been substantial construction on the property. Other courts hold that when a permit has been obtained permitting the use of property in accordance with the then zoning regulations and the holder thereof has proceeded to act thereunder then a vested right is created which is not cut off by a subsequent amendment thereto. See, Fitzgerald v. Merard Holding Co., Inc., 110 Conn. 130, 147 A. 513, certiorari denied, 281 U. S. 732, 50 S. Ct. 247, 74 L. Ed. 1148; Eggebeen v. Sonnenburg, 239 Wis. 213, 1 N. W. 2d 84, 138 A. L. R. 495; Pratt v. City and County of Denver, 72 Colo. 51, 209 P. 508; Crow v. Board of Adjustment of Iowa City, 227 Iowa 324, 288 N. W. 145; City of Lansing v. Dawley, 247 Mich. 394, 225 N. W. 500; Pendleton v. City of Columbia, 209 S. C. 394, 40 S. E. 2d 499; Rice v. Van Vranken, *supra;* Baker v. Somerville, 138 Neb. 466, 293 N. W. 326; Sandenburgh v. Michigamme Oil Co., 249 Mich. 372, 228 N. W. 707.

We have come to the conclusion that if, after a purchase or leasing thereof, a permit is obtained to use lands for a use then permissible under the zoning ordinances and either substantial construction is made thereon or substantial liabilities are incurred relating directly thereto, or both, before the permit is canceled or

revoked then the right to such use has become established and vests as a permissive nonconforming use which cannot be affected by a subsequent change. See Trans-Oceanic Oil Corp. v. City of Santa Barbara, *supra.*

We find appellant's contention in this respect is not well taken for under the facts and circumstances of this case, as hereinbefore fully set out, the appellant had not established any vested right to use these premises for the purpose here contended when the change was made. Consequently, we find that the ordinance passed on December 30, 1948, which eliminated the use of the premises for that purpose, lawfully extinguished his permit and any rights he may have had thereunder.

Appellant also contends that the ordinance passed on December 30, 1947, is arbitrary, unreasonable, and bears no relation to the proper exercise of the city's police powers and deprives him of his property without just compensation and in violation of the provisions relating thereto of both the state and federal Constitutions.

The police power of a city is subject to the limitation that its exercise must be reasonable and for the public good. "The city of Omaha under its home rule charter has the power, by ordinance, to zone the city in the interest of public health, safety, morals and the general welfare. Any such act of the city must however not be unreasonable, discriminatory and arbitrary and it must bear some relationship to the purpose or purposes sought to be accomplished by the ordinance." Cassel Realty Co. v. City of Omaha, *supra.*

However, an ordinance passed in the exercise of such police power properly delegated to a city is presumably valid and the courts will not interfere with its enforcement until the unreasonableness or want of necessity of such measure is made to appear by satisfactory evidence. See, Union Pacific R. R. Co. v. State, 88 Neb. 247, 129 N. W. 290; Faucher v. Grosse Ile Township Building Inspector, 321 Mich. 193, 32 N. W. 2d 440; Ervin Acceptance Co. v. City of Ann Arbor, 322 Mich.

404, 34 N. W. 2d 11; Wilkins v. City of San Bernardino, 29 Cal. 2d 332, 175 P. 2d 542.

As stated in Lombardo. v. City of Dallas (Tex. Civ. App.), 47 S. W. 2d 495: "The authorities are unanimous in holding that courts will presume that the legislative body, in enacting ordinances, acted within their authority, and the burden rests upon those who challenge their validity to show that, in the matter called in question, the action of the municipal authorities was arbitrary, unreasonable, and without substantial relation to the public safety, health, morals, or the general welfare."

We said in State ex rel. Krittenbrink v. Withnell, 91 Neb. 101, 135 N. W. 376, 40 L. R. A. N. S. 898:

"To overturn a city ordinance on the ground that it is unreasonable and arbitrary or that it invades private rights, the evidence of such facts should be clear and satisfactory.

"In determining the validity of a city ordinance regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation.

"In the exercise of police power delegated by the state legislature to a city, the municipal legislature, within constitutional limits, is the sole judge as to what laws should be enacted for the welfare of the people, and as to when and how such police power should be exercised."

As stated in Dundee Realty Co. v. City of Omaha, 144 Neb. 448, 13 N. W. 2d 634:

"What is the public good as it relates to zoning ordinances affecting the use of property is, primarily, a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed, and unless an abuse of this discretion has been clearly shown it is not the province of the court to interfere. * * *

"In passing upon the validity of zoning ordinances, an appellate court should give great weight to the deter-

mination of local authorities and local courts especially familiar with local conditions."

Therein we cited with approval the following from Pettis v. Alpha Alpha Chapter of Phi Beta Pi, 115 Neb. 525, 213 N. W. 835:

"The police power is inherent in the effective conduct and maintenance of government and is to be upheld, even though the regulation affects adversely property rights of some individual. City of Aurora v. Burns, 319 Ill. 84.

" 'If considerations of public health, safety, comfort or general welfare could have justified zoning ordinance, the court must assume that they did justify it, and cannot take issue with the city council.' State v. City of New Orleans, 154 La. 271."

In Pettis v. Alpha Alpha Chapter of Phi Beta Pi, *supra*, the court went on to say: "The weight of judicial authority clearly appears to support the proposition that, before a zoning ordinance can be declared unconstitutional, such ordinance must be either an arbitrary or an unreasonable pronouncement of the council, or it must be without substantial relation to public health, safety, morals, or general welfare."

The following, taken from West Bros. Brick Co. v. City of Alexandria, *supra*, has application here, to wit: " 'Petitioner presents a strong appeal from the standpoint of financial loss occasioned by this restriction. But, as said by the North Carolina court in City of Elizabeth City v. Aydlett, 201 N. C. 602, 161 S. E. 78, 81: "Financial loss is not the test; the question is whether the scheme is sound, and the classification fair." ' (Leary v. Adams, 226 Ala. 472, 147 So. 391)."

"Every intendment is in favor of the validity of the exercise of police power, and, even though a court might differ from the determination of the legislative body, if there is a reasonable basis for the belief that the establishment of a strictly residential district has substantial relation to the public health, safety, morals or general welfare, the zoning measure will be deemed to be

within the purview of the police power. (Acker v. Baldwin, 18 Cal. 2d 341, 344 [115 P. 2d 455]; Miller v. Board of Public Works, 195 Cal. 477, 490 [234 P. 381, 38 A. L. R. 1479]; Zahn v. Board of Public Works, 195 Cal. 497 [234 P. 388]; see Otis v. City of Los Angeles, 52 Cal. App. 2d 605, 614 [126 P. 2d 954].)'' Wilkins v. City of San Bernardino, *supra.*

"What is the public good as it relates to zoning ordinances affecting the use of property is, primarily, a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed, and, unless an abuse of this discretion has been clearly shown, it is not the province of the courts to interfere. Morgan v. City of Chicago, 370 Ill. 347; Speroni v. Board of Appeals, 368 id. 568; Michigan-Lake Building Corp. v. Hamilton, *supra;* Minkus v. Pond, 326 Ill. 467." Zadworny v. City of Chicago, 380 Ill. 470, 44 N. E. 2d 426.

The question of the validity or invalidity of a zoning ordinance presents a question to be determined on examination of the facts presented in each particular case. The evidence here shows, with reference to the tracts herein involved, that the commercial development along Dodge Road is a considerable distance to the south and east; that the immediate area to the east, southeast, and south is the golf course operated by the appellant; that to the southwest, west, northwest, and northeast are residential areas and to the north are some gardens. There appears to be no commercial development in this immediate area. In fact, the entire neighborhood is zoned as residential. Under these facts we do not think the city council acted arbitrarily or unreasonably in the passing of this ordinance. We find that in so doing it properly exercised the police powers granted to it, and that the ordinance is valid and should be enforced. In view thereof, we find the decree of the trial court to be correct and the same is therefore affirmed.

AFFIRMED.

CARTER, J., dissenting.

I am not in accord with the decision of the majority. A zoning law or ordinance is a direct infringement or limitation upon vested property rights. As such they must be reasonable in their application and not constitute arbitrary and capricious legislation.

The property involved in the present case lies outside of the city of Omaha. It is a part of a tract used primarily as a golf course and it is reasonable to anticipate that it will be so used for at least another 18 years since it is under lease for that purpose for that period of time. It lies adjacent to a state highway carrying a heavy volume of traffic, commercial and otherwise. The evidence does not show that there are any residences on this or adjoining tracts within 700 feet of appellant's property.

Under such circumstances I find no justification or reason for zoning the tract as first residence property. The zoning of such property as first residence property is arbitrary and capricious, and has the effect of a condemnation of the property without compensating the owner therefor. It was never contemplated that such an arbitrary interference with the right to use property should be permitted under the guise of zoning for the public good of a municipality. In my opinion the ordinance unreasonably interferes with the property rights of the appellant and is void insofar as it applies to the property in question. This court should so hold.

YEAGER and BOSLAUGH, JJ., concur in this dissent.