VOL. 108]          JANUARY TERM, 1922.          859

State, ex rel. Westminster Presbyterian Church, v. Edgecomb.

STATE, EX REL. WESTMINSTER PRESBYTERIAN CHURCH, AP-
PELLEE, V. R. E. EDGECOMB, APPELLANT.

FILED JUNE 28, 1922.   No. 22462.

1. **Municipal Corporations:** BUILDING REGULATIONS. Under chapter
213, Laws 1915, as amended by chapter 185, Laws 1919, cities of
the metropolitan class are not empowered by ordinance to impose
unreasonable regulations upon the owners of city lots with re-
spect to the area which may be occupied for building purposes.

2. ———: ———: MANDAMUS. A church society, relator herein,
is the owner of two adjacent city lots in Omaha. Under a city
zoning ordinance the city engineer refused to issue to relator a
permit for the erection of a church edifice which would cover
37½ per cent. of the surface area of the lots, the ordinance restrict-
ing such area to 25 per cent. in the zoning district in question.
*Held*, that the requirement is unreasonable; and *held*, that the
court did not err in granting a writ of mandamus compelling the
engineer to issue a permit pursuant to relator's request.

3. ———: ———. Chapter 213, Laws 1915, as amended by chapter
185, Laws 1919, empowers cities of the metropolitan class to im-
pose regulations by ordinance, "designed to secure the safety from
fire and other dangers, and to promote the public health and wel-
fare, including, so far as conditions may permit, provisions for
adequate light, air and convenience of access." *Held*, that under
the act in question it is not permissible for such cities to impose
unreasonable regulations upon the owners of property with respect
to the area of such real estate that they may cover by a proposed
building.

APPEAL from the district court for Douglas county:
CHARLES A. GOSS, JUDGE. *Affirmed.*

*Dana B. Van Dusen* and *John F. Moriarty,* for appel-
lant.

*B. N. Robertson* and *Frank L. McCoy, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH,
DAY and FLANSBURG, JJ.

DEAN, J.

The Westminster Presbyterian Church of Omaha, rela-
tor herein, obtained a writ of mandamus compelling the

chief engineer in charge of the building department of Omaha to issue to relator an official permit to build a church house or edifice on two lots in Omaha located at the northeast corner of Thirty-fifth street and Woolworth avenue. The city of Omaha, respondent herein, contends that the court erred in granting the writ and has brought the case here for review.

Under a zoning ordinance, numbered 10784, Omaha is divided into five classes of area districts, designated respectively as "A," "B," "C," "D," and "E" districts as shown by an area zone map. The church property in question is in the district designated as "E" district.

. Respondent alleges that under ordinance 10784, and particularly under section 19 thereof, an owner or occupant of property within "E" district is not permitted to erect any building or buildings which will cover more than 25 per cent. of the area of such lot or parcel of ground. Respondent offered in evidence the following portions of section 19 of ordinance No. 10784:

"Section 19.   In the district described as 'E' district upon the area zone map, the minimum dimensions of yards and courts and the percentage of area of lots covered by buildings shall be as follows: * * * Building Area.   No plot of ground or lot shall be covered with a building or buildings exceeding 25 per cent. of the area of said lot, or plot of ground."

The ordinance in question was passed and adopted by the city council of Omaha June 29, 1920, and became effective 15 days thereafter.

The relator alleges generally, and respondent admits, that the relator is a corporation organized under the laws of Nebraska "for the purpose of maintaining Christian worship and ordinances under the government and discipline of the general assembly of the Presbyerian church of the United States of America, and constructing and maintaining church edifices and other buildings in which to assemble for the worship of God, and for the administration of such offices and services as pertain to that wor-

ship, and has since the year 1887 maintained and supported a place of worship and now maintains such place of worship in the city of Omaha;" that respondent, R. E. Edgecomb, is now and during all the time material to this action has been the duly appointed and qualified building inspector of Omaha; that he is the chief engineer in charge of the building department of Omaha, which is a municipal corporation of the metropolitan class; that relator is now and ever since November, 1919, has been the owner of the two lots in question at the corner of Thirty-fifth street and Woolworth avenue, and that they "now are occupied by the relator for church purposes, in that the Reverend M. L. Laird, pastor of said church, occupies the residence thereon as a manse or parsonage, and said described property was purchased for the purpose of occupying a portion of the balance thereof in the construction and erection and maintenance of a church building suitable and to be used for the purposes for which the relator herein was organized and upon which the relator has determined and proposes to erect such church building to be used and occupied for the purpose of maintaining Christian worship and ordinances under the government and discipline * * * of the Presbyterian church; * * * that the material (to be) used in the construction of said church edifice is brick, cement, steel, iron and stone and lumber; that the outside walls are to be constructed of brick and stone with a metallic roof; that the same is to be 115 feet by 79 feet and 3½ inches in dimensions and about 30 feet in height, and the estimated cost of the proposed structure is $74,000 and the probable time to be occupied in its erection is 12 months."

The ordinance in question was adopted pursuant to the provisions of chapter 213, Laws 1915, as amended by chapter 185, Laws 1919. The amendatory portion of the act became operative April 16, 1919, under an emergency clause. The act provides generally that cities of the metropolitan class shall have power by ordinance to regulate and limit the height and bulk of buildings; that the city

council may divide the city into districts; that the regulation as to the height and bulk of buildings and the area of yards, courts or open spaces shall be uniform. It is further provided:

"Such regulation shall be designed to secure the safety from fire and other dangers, and to promote the public health and welfare, including, so far as conditions may permit, provisions for adequate light, air and convenience of access. The city council shall pay reasonable regard to the character of buildings existing in such district, the value of the land and the uses to which it may be put, to the end that such regulation may promote the public health, safety and welfare, and the most desirable use for which the land in each district may be adopted, and may tend to conserve the value of buildings and enhance the value of land throughout the city." Section 1.

The act also provides that the city council shall have power to regulate and restrict the location of trades and industries and the location of buildings designed for specific uses, and that "Such regulations shall be designated to promote the public health, safety and general welfare. The city council shall give reasonable consideration among other things to the character of the district, its peculiar suitability for particular uses to the conservation of property values and the direction of building development in accord with a well-considered plan." Section 2.

The act in question further provides for a board, consisting of five members, to be known as a city planning commission, which board shall acquire or prepare a city plan and shall have power to carry out and maintain such city plan after its adoption by the city council, and that "The city planning commission shall recommend the boundaries of districts and appropriate regulations and restrictions to be imposed therein, and shall make a tentative report, and hold public hearings thereon before submitting its final report to the city council. The city council shall not determine the boundaries of any district or impose any regulations or restrictions until after the planning commission

has made recommendation thereon." Section 3.

In his examination the city engineer testified in substance that the city planning commission, April 12, 1921, passed and adopted a motion which in effect provided that, if the majority of the property owners within 300 feet of the proposed church site would consent to the erection of a church edifice, the city planning commission would recommend that relator's two lots "be transferred from the 25 per cent. to the 40 per cent. area district." This to the end that relator's request for a permit to occupy 37½ per cent. of the area of its lots might be complied with.

Space need not be taken to demonstrate that "safety from fire and other dangers," and "the public health, safety and welfare," would not be diminished even if the consent of the property owners within 300 feet of the proposed church edifice had been obtained. Nor do we find pretended authority in the statute, nor does the ordinance pretend to empower the city planning commission to delegate the powers conferred upon it to a majority of the property owners within 300 feet, nor could such authority be lawfully delegated. So that the motion or resolution of the city planning commission, as it stands in the record, appears to be a recommendation that relator's request be granted. Clearly the evidence of the city engineer and the recommendation of the city planning commission support the contention of the relator.

It may be noted that the city engineer further testified that he saw no reason why the church building in question, even if it covered 37½ per cent. of relator's ground, would be a greater fire menace to the city or to its health than if only 25 per cent. were covered. Besides, it fairly appears from the admissions in respondent's answer, with respect to relator's petition, that the city was charged with notice that relator purchased the property, more than four months before the ordinance was passed, for the purpose of erecting a modern church edifice thereon, and that relator held the property with that object in view.

Respondent contends that a proper exercise of the police

power warrants a refusal to issue the permit. Police power is that undefined branch of government which bears the same relation to the municipality that the principle of self-defense bears to the individual. *Barrett v. Rickard,* 85 Neb. 769. "Police power is founded upon public necessity and only public necessity can justify its exercise." *Spann v. City of Dallas,* 235 S. W. (Tex.) 513, citing Cooley, Constitutional Limitations (5th ed.) p. 248. The text reads: "And a by-law which assumes to be a police regulation, but deprives a party of the use of his property without regard to the public good, under the pretense of the preservation of health, when it is manifest that such is not the object and purpose of the regulation, will be set aside as a clear and direct infringement of the right of property without any compensating advantages."

*Chicago, B. & Q. R. Co. v. Drainage Commissioners,* 200 U. S. 561, is cited by relator. Mr. Justice Harlan wrote the opinion for the court. At page 592 this is said: "And the validity of a police regulation, whether established directly by the state or by some public body acting under its sanction, must depend upon the circumstances of each case and the character of the regulation, whether arbitrary or reasonable and whether really designed to accomplish a legitimate public purpose. Private property cannot be taken without compensation for public use under a police regulation relating strictly to the public health, the public morals or the public safety, any more than under a police regulation having no relation to such matters, but only to the general welfare. The foundations upon which the power rests are in every case the same. This power, as said in *Village of Carthage v. Frederick,* 122 N. Y. 268, has always been exercised by municipal corporations, 'by making regulations to preserve order, to promote freedom of communication and to facilitate the transaction of business in crowded communities.'" *Haller Sign Works v. Physical Culture Training School,* 249 Ill. 436, 34 L. R. A. n. s. 998, and note; *In re Opinion of the Justices,* 234 Mass. 597.

It clearly appears to us that the ordinance goes beyond

the scope of authority conferred by the legislature. That part of the ordinance which confines the building area to 25 per cent. of the lot is so restrictive that it is an unreasonable exercise of the power granted by the legislature, and for that reason that part of the ordinance must be held to be invalid. The objection of the city engineer having been based solely on the requirement of that part of an ordinance which we hold to be invalid, it follows that the judgment of the district court must be, and it hereby is, in all things

AFFIRMED.

ROSE, J., dissenting.

The ordinance prohibiting the owner of a lot from covering more than one-fourth of it with buildings in a residential district had its origin in an exalted conception of civic life. The goal of the city council was public improvement, leading to better, healthier, more comfortable and happier conditions. The rich were not to have a monopoly of beautiful surroundings with their wholesome effect on health, morality and usefulness. By means of the ordinance condemned the city council meant to touch the pulse of municipal power for the general welfare. Parents and children of all classes, without regard to former environments, were to breathe pure air, at least in the streets, and see flowering shrubs around private dwellings and listen to the fluted notes of birds in hedges. To some extent these privileges are already enjoyed in public parks. The æsthetic features of municipal activity for the good of the public ought to be recognized and respected. Individual rights and private property must be protected, but they are not gods of government. Ownership and control of lots among urban homes are limited by the proper exercise of police power for the general welfare. Private rights are menaced when the good of society is neglected. When courts interfere with municipal legislation to improve conditions generally they should point out a limitation of power fixed by the supreme law and find facts showing an unmistakable usurpation. In my opinion the reasoning and conclusion of the ma-

jority do not meet the proper tests. When the regulatory power of the city to enact laws for the public good is considered with the individual rights of relator, the ordinance does not seem to me to be unreasonable.