CITY OF LINCOLN, APPELLEE, V. FERDINAND J. FOSS ET AL.,
APPELLANTS.

FILED MAY 1, 1930. No. 27196.

*Wilmer B. Comstock* and *John H. Comstock*, for appellants.

*Frank A. Peterson, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and DAY, JJ., and LIGHTNER, District Judge.

GOSS, C. J.

The defendants appeal from a final decree enjoining them from conducting a restaurant and mercantile business at their home in violation of the provisions of a city zoning ordinance.

The petition for injunction alleged that the city is organized and exists under a home rule charter adopted pur-

suant to the Constitution and attached a copy of the charter as a part of the petition; and alleged that on March 22, 1926, it duly passed ordinance No. 2646, commonly referred to and known as the "Zoning Ordinance," taking effect March 31, 1926, and still in effect, a true copy of said ordinance, including the certificate and map, being attached to the petition. The map shows the zoned classification of each piece of property in the city. The answer of the defendants admitted the foregoing allegations. The petition also alleged, among other things, that, in violation of the ordinance, the defendants, on or about September 17, 1927, established and maintained a restaurant and mercantile business in their dwelling house on the premises under consideration and have as their patrons and customers a large number of pupils attending the public school in the vicinity; that defendants sell to such pupils lunches, sandwiches, candies, and confections which these customers obtain in large numbers in paper wrappings, and with the consent of the defendants remove said wrappings from their purchases on said premises and adjacent thereto and scatter the same, together with such food as they do not consume, about said premises and on the streets adjacent thereto, to the detriment and injury of the property in the vicinity as residence property. The answer of the defendants alleges that they purchased the property and built their home there intending always to use the same exclusively as a dwelling, but thereafter the Irving school was constructed immediately across the street from their home and the natural conduct of school children, described at some length, impaired the market value of their home; that in order to recoup a portion of their loss they made such use of their basement as has been heretofore described in this opinion, but kept no sign indicating that sales were carried on within the premises, that the premises retained their strictly residential appearance, and that nothing was done about said premises which gave to them any aspect of business or affected or conflicted with the character or general atmosphere of the residence neighborhood; that

the zoning ordinance, by its own provisions, or through action of the board of appeals, at other places where there are schools and under conditions similar to this, permits restaurants and candy shops to be operated, and so the ordinance, if not permitting such use of the premises of the defendants, is an unreasonable and arbitrary discrimination against the defendants; that the ordinance is not applicable to nor does it prohibit the use made by the defendants of the premises, because such use does not violate the purpose and spirit of the ordinance but conforms to the conditions and circumstances created entirely by the maintenance of a large school at that place; that, under the conditions, the use of the property is in effect exempted from the operation of the ordinance by reason of the provisions therein attempting, by an unlawful delegation of judicial and legislative authority, to grant to a so-called "board of appeals" the right to recognize exemptions in such a case; and defendants say that all such exemptions must therefore be read into the ordinance without action of the board of appeals, or the entire ordinance be held void; and that the ordinance, if held applicable, and to prohibit the said use of the property of defendants, is arbitrary, unreasonable, and void, and in violation of sections 3, 21, and 25, art. I of the Constitution of the state of Nebraska, and in violation of the fifth and fourteenth amendments to the Constitution of the United States.

We have read the record and find there is little material dispute in the evidence. The defendants are husband and wife. They acquired title to the lot in question by deed dated January 24, 1923. Mrs. Foss testified that she was the exclusive owner, but the deed in evidence ran to both as tenants in common. This is not material as both were parties. That year they built a home and double garage and made other improvements on the lot. The total cost of the lot and improvements was $9,800. The property is at the southeast corner of Woodcrest and Twenty-second streets. The home faces north and is known as 2201 Woodcrest. The neat two-storied brick and stucco house is on

a terrace about five feet above the grade of Twenty-second street. Irving Junior High School is located across the street west of the Foss home. The school grounds occupy the equivalent of four city blocks. The building is located on the eastern part of the tract, is 313 feet east and west and 189 feet wide. At the time of the trial there were 911 pupils in attendance. The school board acquired the property in 1920, erected the building in 1926 and 1927, and it was opened for school purposes on September 12, 1927. On September 17, 1927, Mrs. Foss applied for and secured from the agricultural department of the state a certificate of registration to conduct a restaurant at the family home. A year later the certificate was renewed for another year. The intent in securing the certificate was to comply with state regulations, and not to conduct a public restaurant. The purpose was to cater to the pupils from the school. The evidence does not indicate that the appellants intentionally departed from this purpose. For a considerable time they served the pupils with hamburger sandwiches, candy, pop, and the like, served from the back door for a time and later from the garage. When cold weather set in they let the children go through the house to the basement to eat. Sometime during the first year they remodeled the basement. They cut the terrace and the wall on the west side of the house and made an entrance to the basement from the street. The pictures in evidence show a neat entrance, with sidewalls of masonry through the terrace and with a paved walk from the curb to the basement door. The basement is plastered, is furnished with a few tables and with a showcase to protect the merchandise carried for the pupil customers. The cooking is done in the basement. Candy sales run from $5 to $10 a day. In warm weather they sell from 24 to 36 bottles of pop a day. They have four small tables and serve about 30 each day with food. They purvey hot lunches of mashed potatoes, gravy, meat loaf, salmon loaf, and baked beans. The evidence shows that for a long distance north, south and east is a high class, exclusively residential neighbor-

hood. Except for the school the same condition prevails to the westward. In this locality the deeds appear to carry restrictions as to setbacks from the street and as to the minimum values of improvements to be permitted. This is stated merely for whatever bearing it may have on the reasons for fixing zoning provisions and of the reasonableness of the provisions as fixed.

The zoning ordinance consists of 13 sections. The first section divides the city into five classes of districts—residence, apartment, local business, commercial, and industrial. The third section defines the use to which buildings in the residence district may be put and prohibits any other use. The permissible uses do not allow a restaurant in a residence district. They do allow a school. Section 11 of the ordinance declares each section and subdivision of a section independent of every other so far as inducement for the passage is concerned; and that the invalidity of one shall not invalidate another.

A map attached to the ordinance and made a part of it shows that the residence of the defendants was and has been, from the time the ordinance went into effect, located in a residence district. The evidence clearly indicates that it is used as a restaurant contrary to the terms of the ordinance, and that such use did not begin until more than a year after the ordinance became effective. If the ordinance is valid, the facts pleaded and proved in this case are sufficient to prevent the use of the property by the defendants for restaurant purposes.

Section 9 of the ordinance provides for a board of appeals consisting of the city engineer and the five members of the city council. It provides for an appeal from the refusal of the building inspector to grant a building permit, provides that the building inspector may, on application for a permit, request the board for an interpretation and application of any provision of the ordinance, and provides also that the board shall have power to adopt rules and regulations from time to time to carry into effect the provisions of the ordinance and to interpret its provisions so as to

carry out the intent and purpose of the plan. These powers are all made subject to the power and to the final action of the city council. The section provides adequately for an appeal to the council.

The appellants argue that this section of the ordinance is unconstitutional and void because it delegates legislative and judicial power to a board of appeals without any rules to guide it. On the facts at bar that objection in the terms in which it is made affords no help to appellants, because, as we find the facts, the board of appeals as such had nothing to do with the zoning of this particular property. It appears that in the ordinance this was zoned in the residence district. But the appellants seek to aid the above stated proposition as to the delegation of power by the further proposition that the ordinance thus authorizes discrimination between citizens in respect to the enjoyment of property. That power of discrimination, they argue, is inherent in the authority granted the board of appeals to use their arbitrary power, without regard to a reasonable legal discretion, to allow one to carry on a restaurant business in a residential district but to refuse it to another in similar circumstances.

The leading case cited by them is *Yick Wo v. Hopkins,* 118 U. S. 356 (decided in 1886). Ordinances of the city of San Francisco made it unlawful to carry on a laundry within the corporate limits "without having first obtained the consent of the board of supervisors, except the same be located in a building constructed either of brick or stone." Plaintiffs were convicted of violations of these ordinances by operating laundries in wooden buildings. They were discharged on writs of habeas corpus by order of the supreme court of the United States. That court very properly held that the ordinance was unconstitutional on two grounds: First, in its administration, as shown by the facts, it "makes arbitrary and unjust discriminations, founded on differences of race, between persons otherwise in similar circumstances;" second, it shows on its face that it conferred arbitrary power upon the munici-

pal authorities "at their own will, and without regard to discretion in the legal sense of the term, to give or withhold consent as to persons or places, without regard to the competency of the persons applying, or the propriety of the place selected, for the carrying on of the business." In the course of the opinion the court touched the vice of the ordinance when it said: "They (the ordinances) seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons." The appellants cite other cases from state courts to the same general effect. The principle is sound. The question here is whether it is applicable.

We find nothing in the body of section 9 of the ordinance nor elsewhere, nor have appellants pointed out anything either in the ordinance or in the practice of the board, that suggests any exercise of delegated authority or any favored treatment of one citizen or of any single piece of property as compared with any other citizen or any other property. The ordinance and the map seem to show that all lands and lots within the city limits were zoned. The application of the zoning principle to the home of the appellants was by virtue of the ordinance duly passed by the city council itself under and by virtue of the home rule charter of the city. There was no act by the board of appeals. The section adjures them "to carry out the intent and purpose of the plan." We are of the opinion that section 9 of the ordinance has not been shown, in the circumstances of this cause, to be unconstitutional in this phase. If the power claimed by the appellants to be delegated to the board of appeals should be exercised in an arbitrary or discriminatory way as to parties, classification of business, or as to different real properties in the same general situation, then will be the time to pass upon that feature of the ordinance.

In the second point of their argument the appellants assert that the city, by seeking this injunction, has shown an interpretation of its zoning ordinances which makes its

provisions arbitrarily discriminatory. This point relates to the fact, appearing in the evidence, that in the junior high school, just across the street, the board of education maintains, during the school year, a well-equipped cafeteria where about 600 of its 911 pupils—all who desire it —are furnished lunches at cost. The school district is an entity, distinct and separate from the city. The district and the city are not coextensive. The district comprises all of the city and more. Its taxes are not only levied but are collected by the county authorities. The officials of the district were probably in sympathy with the suit. As shown by the evidence, at least one member of the board of education and some of the teachers believed that the operation of the restaurant by the appellants was injurious to the discipline of the school and not helpful to the health, safety and welfare of the pupils. It created an extra hazard in the crossing and recrossing of the street by the pupil customers of the restaurant. But it cannot be argued with much plausibility that the city is not the real party in interest here and that it does not come into a court of equity with clean hands when it asks that the appellants be enjoined from violating the ordinance, even though the school board favors the suit and even though it operates a cafeteria in the same neighborhood.

The city has a real interest in the enforcement of all proper ordinances regulating building and zoning of property within the corporate limits. We see no good reason why it may not act to further the interests of any citizen or legal entity when those interests coincide so vitally with its own. If, on the other hand, the board of education is violating the zoning ordinance by maintaining a cafeteria within an area restricted against such an activity, the city could not join it with the appellants. Moreover, the ordinance does not prohibit schools within a residence district. The school property was purchased by the board of education years before appellants purchased theirs and six years before the property was zoned. There may be presented good reason and authority for saying that among the pro-

gressive things of this age the serving of lunches to pupils by the school authorities is a proper function of a board of education. It affords proper food and time to eat it to those pupils whose homes are too remote to allow them to go there for the usual midday meal. It fits into the subject of education on the line of home economics. It assists the spirit of social democracy in a way that was unknown a generation ago. We have always had in our public schools, to a greater or less extent, the democracy of study and of play. Now we have the democracy that comes from the meeting of pupils of all classes at the lunch table.

We do not undertake to decide a case in which a party is not before the court. While we do not decide the ultimate merits of any future controversy between the city and board of education over the right to operate a cafeteria in a public school, yet it is proper here, in view of the issues raised by the appellants, to refer briefly to the law in other jurisdictions. In *Harvard College v. Assessors of Cambridge,* 175 Mass. 145, it was held that the use of real estate owned and furnished rent free by the college for the use of students who club together for the purpose of obtaining, with the assistance of the college, food at cost, does not subject the real estate to taxes when the revenue laws exempt property used for college purposes. In *City of Chicago v. University of Chicago,* 228 Ill. 605, it was held that dormitories, dining halls and club houses located upon a college campus, used for conducting the educational work of the university, and not for gain, are well within the meaning of an ordinance remitting water rates to all buildings used for educational purposes. In a case relating to a zoning ordinance (*Western Theological Seminary v. City of Evanston,* 325 Ill. 511) it was held that a provision allowing schools and colleges to be erected in a residence district permitted the erection of dormitories where students would use a students' common or dining room. Whatever may be the attitude of the city of Lincoln in any controversy between it and the school district, or whatever may be the opinion of this court if and when such a contro-

versy come to us, we cite the above cases merely to exempt the city from any conclusive suggestion of bad faith or discrimination in any legal sense in not prosecuting the school district for running a cafeteria while it enjoins the appellants from operating a restaurant.

The remaining point argued by appellants is that the police power cannot be invoked here to sustain the application of the ordinance. Regulating the uses to which real property in cities may be put is a matter of comparatively recent origin. The zoning of cities in this country began well within the present generation. Naturally it had its origin in our state more recently than in some of the older states where the problems of varied industries and business and a more congested population emphasized the need for regulation and found a justification in some aspect of the police power asserted in the interests of the welfare of the public. It is difficult, if not impossible, to lay down any general rules describing the exact field of operation of such power that will fit cases arising in the future. Each must be controlled by the special conditions and circumstances surrounding it. It must be controlled by constitutional principles, the meaning of which does not change but the application of which to new conditions varies with the everchanging conditions of a growing civilization.

For examples of the cases we have had where zoning laws were passed upon: In *State v. Edgecomb*, 108 Neb. 859, it was held that a zoning ordinance was unreasonable as applied to the particular circumstances of that case because it denied the right to a church to erect its edifice upon its own lots for the sole reason that the building would cover $37\frac{1}{2}$ per cent. of the area while the ordinance limited the area to 25 per cent.; and in *Pettis v. Alpha Alpha Chapter of Phi Beta Pi*, 115 Neb. 525, it was held that the police power would sustain an injunction against the use of a residence by a college fraternity in violation of the classification of such property in a zoning ordinance. This latter decision received much of its support from *Village*

*of Euclid v. Ambler Realty Co.*, 272 U. S. 365, in which that court reversed a decree of the district court enjoining the enforcement of a zoning ordinance. We content ourselves with quoting one sentence therefrom: "The police power supports also, generally speaking, an ordinance forbidding the erection in designated residential districts, of business houses, retail stores and shops, and other like establishments, also of apartment houses in detached-house sections, since such ordinances, apart from special applications, cannot be declared clearly arbitrary and unreasonable, and without substantial relation to the public health, safety, morals, or general welfare."

Under the authority of our own holding in the *Pettis* case and of that of the supreme court of the United States in the *Euclid* case, we are of the opinion that the zoning ordinance as appealed against here is not unconstitutional. It is sustainable under the police power as having substantial relation to public health, safety, and general welfare.

For the reasons stated, the judgment of the district court is

AFFIRMED.