DUNDEE REALTY COMPANY, APPELLANT, V. CITY OF OMAHA ET AL., APPELLEES.

13 N. W. 2d 634

FILED MARCH 17, 1944. No. 31578.

*Ellick, Fitzgerald & Smith,* for appellant.

*Harold C. Linahan, W. W. Wenstrand, G. H. Seig* and *Edward Sklenicka, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

MESSMORE, J.

Plaintiff owned real estate in Omaha which was included by ordinance within a restricted zone for high-type residential use. Plaintiff contends that such inclusion was unreasonable, arbitrary and amounted to the taking of its real estate, or a part thereof, unlawfully. The trial court sustained the ordinance.

In this case there is a stipulation that the trial court, who heard and determined the first action, try the issues involved in this, the second, action. The transcript sets forth a history of the ordinances involved, their relationship to each other and their effect. Inasmuch as the two actions

are consolidated and the issue to be determined is whether ordinance No. 15068 is unconstitutional and void for the reason that it is arbitrary and unreasonable, that it destroys the plaintiff's property, and that it does not promote the public health and morals or general welfare, we deem it unnecessary to set forth the pleadings involving the prior ordinances, their relationship to each other and their effect, but rather to confine the decision in this case to the ordinance here involved and the pleadings relative thereto, having considered the previous litigation and the factors upon which the trial court determined it. A summary of the pleadings directly involving the issue here presented is as follows:

The petition alleges that plaintiff is the owner of the following described real estate:

"A tract of land in the City of Omaha, Douglas county, Nebraska, and located within the N. W. ¼ of the N. W. ¼ of Section 19, Township 15, North, Range 13 East of the 6th Principal Meridian, particularly described as:

"Beginning at a point on the present north line of Dodge Street 33 feet north and 213 feet east of the southwest corner of the N. W. ¼ of the N. W. ¼ of said Section 19; thence east along said north line of Dodge Street 718.3 feet; thence north 8 degrees 25 minutes east 72.2 feet; thence on a curve to the right with a radius of 1102.2 feet, 536.5 feet, more or less, to its intersection with a line 560 feet north of, and parallel to, the present north line of Dodge Street; thence west along said parallel line a distance of 1,000 feet; thence south 7 degrees 52 minutes east to the place of beginning."

The petition alleges that on July 21, 1942, the city council of defendant city passed a purported ordinance No. 15068, made a part of the petition; that more than 15 days have elapsed since the passage of said ordinance, and no protest has been lodged against the same, as provided by section 14-211, Comp. St. 1929; that plaintiff's land, hereinbefore described, is wholly within the area covered by section 1 of the ordinance; that by the terms thereof plain-

tiff's property is classified for building purposes as AA residence and AB height and area.

For brevity we summarize the uses provided under section 61-1.3, AA residence district: (1) One-family dwellings; (2) churches; (3) only such gardening as is exclusively for the use of occupants of the dwelling located on the premises; (4) certain accessory buildings; (5) uses customarily incident to any of the above uses when located on the same lot and not involving the conduct of a business; (6) no signs except those appertaining to the lease, hire or sale of building on premises and then not exceeding eight square feet in area. With reference to the AB height and area ordinance, attached to the petition, it requires a lot area of not less than 5,000 square feet per dwelling, a main building more than one story in height, to have a ground area of not less than 1,200 square feet, and, if one story in height, a ground area, exclusive of garage, of not less than 1,000 square feet, as provided in section 61-1.15 AB height and area district, and providing for the set-backs, which we need not set out. With reference to the lot area per dwelling and building area, the effect of ordinance No. 15070, repealing certain parts thereof, is contained in the opinion.

The petition further alleges that the tract of land involved has a frontage of 718.3 feet on Dodge street and extends back from Dodge to the north a distance of 560 feet; that Dodge street, abutting this land, is a transcontinental highway, used by 9,000 motor vehicles, including trucks and transport vehicles, each 24-hour period; that, as a result of such heavy traffic on Dodge street, the street is dangerous and difficult for pedestrians to cross, and there is almost continual noise from the passage over Dodge street of so many vehicles, caused by the sounding of horns, application of brakes, and noise incident to the movement of such a volume of traffic; that, consequently, said tract of land is wholly unsuited and unfit for high-class residence purposes, such as provided for by paragraph 4 of the ordinance, referred to above; alleges that the passage of ordinance No.

15068 does not promote the public health, morals or general welfare, and that the zoning, as contemplated by the ordinance, is an unlawful, arbitrary and unreasonable exercise of the power of zoning, as vested in the city authorities by law, and that such ordinance is null and void and of no effect; that the existence of the ordinance, absent any attempt to enforce it, operates to and does reduce the value of plaintiff's property, destroys the marketability thereof for its actually lawful uses, and constitutes an invasion of plaintiff's property rights, deprives the plaintiff of its property without due process of law and equal protection of the laws, in violation of the Fifth Amendment and of section 1 of the Fourteenth Amendment to the Constitution of the United States, and of section 3, art. I of the Constitution of Nebraska, amounts to a taking and damaging of plaintiff's property without just compensation, in violation of the Fifth Amendment to the Constitution of the United States, and of section 21, art. I of the Constitution of Nebraska.

The petition alleges that plaintiff intends to and will erect upon said tract of land certain buildings and structures that do not comply with the requirements of the AA and AB classifications, respectively, and that the defendants intend to and will seek to prevent plaintiff from so using that part of its property, and the plaintiff will be denied building permits except for residences conforming to the provisions of the ordinance, and, unless restrained by this court, will harass, embarrass and impede plaintiff in the lawful use of its property. Plaintiff prays that the court adjudge ordinance No. 15068 unconstitutional, null and void, as applied to plaintiff's land, and that defendants be permanently enjoined from attempting to enforce the ordinance.

The answer, for the purposes of this opinion, may be considered as a general denial of the petition, and all of the admissions of fact therein have been noted. Its prayer is for a dismissal of plaintiff's petition. The court adjudged ordinance No. 15068 valid and constitutional, and not arbitrary or unreasonable. Plaintiff appeals.

In the record is an agreement made on the 23d day of January, 1939, between the plaintiff as seller and one George D. Fraser as purchaser, describing the real estate to be sold: A frontage on Dodge street of 718 feet, fanning out to a width of 750 feet at a point 560 feet north of Dodge street. The tract is 700 by 560 feet in dimension. On the date of the agreement there was to be a deposit made of $10,000; the balance of the purchase price of $30,500 to be paid by the purchaser upon the happening of certain events, which we need not set out. The seller agreed, in the proposed development of the real estate, that certain portions thereof, as well as other portions of real estate owned by the seller, were to be conveyed to the city of Omaha for park and boulevard purposes, pursuant to plans adopted, on the condition that defendant city agree to grade the boulevard, give it permanent care, install storm sewers, lay suitable black-top pavement and concrete gutters, at the expense of the city; the south 300 feet of the purchaser's tract to be classified as "Class C Commercial District" under the zoning ordinance of the city, and that the city is endeavoring to obtain a grant from the government for the purpose of defraying part of the cost of the public improvement. The purchaser was under no obligation to purchase property located immediately north of the property mentioned in the contract. It is unnecessary to set out other provisions of the contract.

The plaintiff's land is near a high-type residential district in the city of Omaha. The proposed boulevards, referred to in the contract, had not belonged to the city and were a part of the proposed plan set up by the plaintiff. To the north and east, a short distance away, is a girls' school, Brownell Hall. Across Dodge street from the zoned tract, a short distance, is Elmwood Park, a public park. South and west is the University of Omaha, a coeducational institution, and almost directly west are a beautiful Catholic church, recently constructed, and the residence of the bishop, the head of the church of that faith. The plaintiff proposed to build on the strip of land in question high-class

commercial shops with private road and parking area, buffeted by landscaping, so that those patronizing the shops would not park on Dodge street, but space would be provided, and the traffic area through Dodge street would be clear. Plaintiff proposed to erect north of the shops garden apartments of modern design and construction. Exhibits appearing in the record disclose the proposed buildings on plaintiff's real estate as examples of high-type commercial structures to accomplish the necessary needs of the population to be served. This is developed by similar construction of well known city planners and contractors, and, obviously, to show the necessity for such an enterprise.

An expert testifying for the city, in determining hazards arising from fire, testified that no fire hazard would result from the proposed development of the 300-foot strip north of Dodge street with shops, and likewise no fire hazard would result from building north of the 300-foot strip, and that the type of construction proposed by the plaintiff on the 260-foot strip north of the 300-foot strip constituted no fire hazard other or different from that which is ordinarily present.

The traffic engineer of the police department described in detail the travel on Dodge street adjacent to the plaintiff's tract, indicating that 9,660 vehicles traversed Dodge street at that point in a 24-hour period. He testified to the noise, its volume east and west of the plaintiff's tract, due to two hills; to the shifting of gears, the approach of cars at what is known as the Happy Hollow intersection from the east, taken at a point 88 feet back of the intersection, and placed the average speed of vehicles approaching such boulevard and Dodge street from the west at 42½ miles an hour. It was further explained that Dodge street at that point carries four U. S. highways and has the heaviest traffic at 42½ miles an hour of any point in Omaha.

The plaintiff states that the ordinance requires a lot area of not less than 5,000 square feet per dwelling and requires a main building, more than one story in height, to have a ground area of not less than 1,200 square feet, and, if one

story in height, a ground area, exclusive of garage, of not less than 1,000 square feet. It appears that ordinance No. 15070 absolutely repealed the building area part of AB height and area requirements of ordinance No. 14924, in keeping with this court's decision in *Baker v. Somerville*, 138 Neb. 466, 293 N. W. 326.

The case before us in no manner conflicts with the *Somerville* case. The facts are not analogous. In that case, the engineer testifying to parts of the ordinance now repealed stated that the section in question was zoned purely for aesthetic reasons, while in the instant case the facts deal decisively with the welfare, morals and safety of the people of the city of Omaha.

The plaintiff seeks, by the foregoing evidence, to show that the result of the ordinance is the taking of plaintiff's property and reducing its value, and that it has been appropriated for public use without just compensation. The AA use ordinance permits one-family dwellings, churches, only such garden space as is for the exclusive use of the occupants of the dwellings; certain accessory buildings, uses customarily incident to the uses named in the ordinance, when located on the same lot and not involving the conduct of a business, and permits no signs except those appertaining to the lease, hire or sale of buildings on premises, and the signs not to exceed eight square feet in area.

The plaintiff offered the testimony of experts in city planning, landscape architects and engineers, whose firms had done city planning, land architecture and subdivision work in a great many cities. These witnesses detailed how they took into consideration the topography of the land, the population of the city, its growth, its building apartment needs, the direction of growth, the surrounding development, the type of structure prevailing, the number of vacant lots available, their size, and how to make a thorough, complete analysis for the purpose of adequate and proper city planning. These witnesses stated that the zoning complained of was unreasonable, as applied to plaintiff's tract, and unanimously agreed that the proposed construction for

shops and garden apartments was a logical development of this tract of land and a reasonable use thereof.

The witness Riley, an expert, in substance testified that an additional community shopping center was needed; that the nearest one was about 3,000 feet eastward on Dodge street, in the vicinity of Fiftieth street; that rural community centers should be approximately a half-mile apart, and this particular section was that distance from any other shopping center; that the shopping district would be compact, would serve a neighborhood that could use it to advantage, due to the type of residents. He detailed other facts to the effect that if the 560-foot tract were devoted to residential use exclusively only homes of the value of $3,500 to $4,500 could be built on plaintiff's tract, which would cheapen the development and not be in keeping with the surrounding property; that the tax element on such type of homes would not be beneficial to the public. Other experts corroborated this testimony and detailed the construction of the type contemplated as reasonable and proper, stating that single-family residences on such a tract were not desirable and would decrease the valuation of the plaintiff's tract. One witness commented on the convenience of an orthodontist, beauty shop, grocery, drug store, children's shops, plumbing and shoe-repair shops,—to show some of the business enterprises that might be of value; testified that this tract of land was definitely situated for such purposes, and the single-family residence, as proposed by the ordinance, was unreasonable and impracticable; that properties adjacent to highways, with such heavy traffic, are not desirable for single-family residences; that the factors to be taken into consideration in zoning commercial areas are: Proper set-backs and entrances to the business properties, designed not to impede traffic on thoroughfares, ample parking space, grounds around the business for beautification, and that the proposed construction contemplated all of these factors.

At this point it may be well to explain that the city of Omaha has not enacted an ordinance that would contem-

plate high-type commercial building, such as proposed by the plaintiff. The ordinance in effect is a commercial ordinance for almost any type of business, without restriction. Any complaint that plaintiff has to offer, so far as this case is concerned, affecting the type of building of this nature, as against the type classified as "Class C Commercial District," where no other ordinance is enacted covering such matters, cannot be taken into consideration.

The evidence discloses the different values attached to the plaintiff's tract for the proposed use thereof by it, and the value of the tract under the use provided by the ordinance. In this connection, in the first instance, the value of the land designated in the contract is from $50,000 to $91,800, and, with no development of this nature, from no valuation to a value of $1,500 to $2,000, to $13,000, and in developing the value as contemplated by the ordinance there is much evidence concerning the frontage, the necessary set-back for residential purposes, the cost of promotion and sales, and all matters that pertain to the requirements for dwellings. In addition, there is testimony of nonexpert witnesses for the defendants, showing the distance from their respective properties to the edge of the plaintiff's tract of land and to the shops proposed to be erected thereon. This varies, to the edge of plaintiff's tract, from 240 to 1,700 feet, and to the proposed shops from 440 to a distance of 2,100 feet. The distances vary with the proximity of each of the witnesses' dwellings accordingly.

The expert witnesses for the defendants, who are real estate dealers and brokers of long standing in the city of Omaha, testified to the high value of the plaintiff's tract of land for residential purposes, when compared with buildings for commercial purposes, and the benefit of the whole tract involved; that the proposed development would lower the values of the balance of the tract, zoned for residential purposes, and that, as a general rule, commercial zoning in the defendant city is too extensive and beyond the need. The witnesses drew their conclusions that it would not be for the public welfare to place commercial property on any

part of the tract, one witness testifying that the city of Omaha has enough commercial zoning for a city of 686,600 population, and that the best residential area in Omaha is from Fifty-second street to Seventieth street on both sides of Dodge. It is true, from a review of the record, that in this location, where the plaintiff's tract of land is situated, are many of the most substantial and best residences in the city, with 'a more regulated value from $20,000 to $25,000.

Without detailing the testimony of the nonexpert witnesses or setting forth their qualifications, suffice it to say that they built their homes in that vicinity, recognizing all of the elements that constitute a high-type residential district, and long before the use, to which plaintiff proposed to put this tract, was contemplated, and have been served by a business community close enough for their purposes. They have concluded that the proposed building of shops and garden apartments, as contemplated, would lessen the value of their properties to a considerable extent. All of these witnesses are substantial business citizens of the city.

Due to the confusion with reference to the required setback of property, such as dwellings, ranging from 100 feet to approximately 300 feet, and the value of such dwellings proportionately to the business enterprise proposed by the plaintiff, we consider the record in its entirety, the general effect of the ordinance on the units as a whole, and the benefits which it seeks to develop for the citizens, to determine its validity. A large portion of the evidence is not relevant to the subject matter. We have summarized that deemed pertinent to the issue involved.

Plaintiff cites *Nectow v. City of Cambridge*, 277 U. S. 183, 48 S. Ct. 447; *Standard Oil Co. v. City of Kearney*, 106 Neb. 558, 184 N. W. 109; *Webber v. City of Scottsbluff*, 141 Neb. 363, 3 N. W. 2d 635; *Matter of Monument Garage Corporation v. Levy*, 266 N. Y. 339, 194 N. E. 848; *Baker v. Somerville, supra*; *Ehrlich v. Village of Wilmette*, 361 Ill. 213, 197 N. E. 567; on the premise that the ordinance here involved results in taking the owner's property, and is unlawful, arbitrary, confiscatory and void.

The authority of the city for zoning purposes is reflected by sections 14-368, 14-401, 14-404, Comp. St. 1929. Section 14-404 reads as follows: "For the purpose of promoting the health, safety, morals or the general welfare of the community, the city council in cities of the metropolitan class is hereby empowered to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. Such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained."

Section 14-368, Comp. St. 1929, provides in part: "Each regulation shall be designed to secure the safety from fire and other dangers, and to promote the public health and welfare." Other provisions of the statute, affecting the zoning act and city planning, need not be summarized or set out.

We have no quarrel with the cases cited under the facts and circumstances therein stated and the law applicable thereto. The question of the validity or invalidity of a zoning ordinance presents a question to be determined on examination of the facts in each particular case presented. On this proposition the law is well settled.

There is ground for legitimate differences of opinion concerning the reasonableness of an ordinance. In the development of our civil life, the definition of public welfare has also developed until it has been held to bring within its purview regulations for the public welfare and public convenience.

In *Pettis v. Alpha Alpha Chapter of Phi Beta Pi,* 115 Neb. 525, 213 N. W. 835, we find the following holdings:

"The police power is inherent in the effective conduct and maintenance of government and is to be upheld, even though the regulation affects adversely property rights of some individual. *City of Aurora v. Burns,* 319 Ill. 84.

" 'If considerations of public health, safety, comfort, or general welfare could have justified zoning ordinance, the court must assume that they did justify it, and cannot take issue with the city council.' *State v. City of New Orleans,* 154 La. 271.

"The police power extends to all the great public needs. 'It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare.' *Noble State Bank v. Haskell,* 219 U. S. 104."

In *Lombardo v. City of Dallas,* 47 S. W. 2d (Tex. Civ. App.) 495, it was held: "That zoning ordinance, otherwise valid, limits use and depreciates value of property, is no reason for holding void ordinance passed in interest of public welfare. * * *

"Effective 'zoning' necessarily comprehends prohibitions against certain uses in named districts and restrictions as to area of lots to be built upon, size and height of structures, and similar matters." The court said:

"It is not an effective argument against a zoning ordinance, otherwise valid, that it limits the use and depreciates the value of property, as the public health, safety, morals, and the general welfare are superior in importance to the pecuniary profits of the individual owner."

"Such regulations are sustained, under the complex conditions of our day, for reasons analogous to those which justify traffic regulations, which, before the advent of automobiles and rapid transit street railways, would have been condemned as fatally arbitrary and unreasonable. And in this there is no inconsistency, for while the meaning of constitutional guaranties never varies, the scope of their application must expand or contract to meet the new and different conditions which are constantly coming within the field of their operation." *Village of Euclid v. Ambler Realty Co.,* 272 U. S. 365, 387, 47 S. Ct. 114.

The court will not substitute its judgment for that of the city council if the classification for zoning purposes be fairly dependable.

"What is the public good as it relates to zoning ordinances affecting the use of property, is, primarily, a matter lying within the discretion and determination of the municipal body to which the power and function of zoning is committed, and unless an abuse of this discretion has been clearly shown, it is not the province of the courts to interfere." *Zadworny v. City of Chicago*, 380 Ill. 470, 44 N. E. 2d 426.

In the case of *Hawkins v. City of Red Cloud*, 123 Neb. 487, 243 N. W. 431 (appeal dismissed 1933, certiorari denied, 289 U. S. 704, 53 S. Ct. 660), the court held:

" 'In determining the validity of a city ordinance regularly passed in the exercise of police power, the court will presume that the city council acted with full knowledge of the conditions relating to the subject of municipal legislation.' *State v. Withnell*, 91 Neb. 101.

" 'In the exercise of police power delegated by the state legislature to a city, the municipal legislature, within constitutional limits, is the sole judge as to what laws should be enacted for the welfare of the people, and as to when and how such police power should be exercised.' *State v. Withnell*, 91 Neb. 101.

"The ownership and use of private property in a city is subject to proper police regulations required by public safety and welfare.

"Police regulations promoting public safety and welfare may be valid, though restricting the liberty of citizens in regard to occupations and the ownership and use of property.

"Private property used in a business prohibited by a valid police regulation may be depreciated in value by such legislation without any provision to compensate the owner for his loss.

"If a city ordinance is valid as an exercise of police power, courts will not inquire into the motives of the city council in enacting it." See, also, *State v. Edgecomb*, 108 Neb. 859, 189 N. W. 617, 27 A. L. R. 437; *City of Lincoln v. Foss*, 119 Neb. 666, 230 N. W. 592; *State v. Anderson*, 122 Neb.

738, 241 N. W. 545; *Village of Euclid v. Ambler Realty Co.,* *supra; Pettis v. Alpha Alpha Chapter of Phi Beta Pi, supra.*

In *Marblehead Land Co. v. City of Los Angeles,* 47 Fed. 2d 528, it was held: "Appellate court, in passing on validity of zoning ordinance, should give great weight to determination of local authorities and local courts especially familiar with local conditions."

Objection is made to the conduct and remarks of the trial court throughout the trial. It is contended that such remarks demonstrated the court had prejudged the issue involved, and, therefore, the decree was not based upon the evidence. This case comes here for trial *de novo,* as contemplated by section 20-1925, Comp. St. 1929, and is determined accordingly.

Our conclusion is reached from an analysis of the record and considering these factors: The new and beautiful Catholic church, which lies to the west of this zoned tract; Elmwood Park, used by the population of Omaha, men, women, boys and girls; the University of Omaha, a coeducational institution, beautifully landscaped and used by many students; the fact that Omaha, by the vote of its people, has legalized the sale of intoxicating liquor by the drink; the heavy traffic which would, of necessity, be increased by the erection of the store buildings and garden apartments, as contemplated; the commercial ordinance of the city of Omaha as it now exists, without restrictions as to the businesses that might occupy the proposed store buildings, the close proximity of the girls' school, and the substantial character of the residences in the immediate vicinity, of the very best and highest type in the city. We can arrive at no other conclusion than that the city of Omaha did not act unreasonably, in effect, by the adoption of the zoning ordinance, holding that the public welfare and morals would be essentially and vitally affected by the proposed structures, and that only by the exercise of the police power, which we deem properly vested in the city, can the city zone the plaintiff's tract of land and adequately co-ordinate it in keeping with the best interests of the people as a whole.

We hold that ordinance No. 15068 is valid and constitutional, as applied to the plaintiff's land, and that such ordinance is not arbitrary or unreasonable, as applied to plaintiff's land, but is to the best interests of the city of Omaha, for the reasons given in this opinion; that the plaintiff's land is subject to the AA use and AB height and area provisions of defendant city's zoning ordinance, being sections 61-1.3 and 61-1.15 of the Municipal Code, as modified by ordinance No. 15070; that plaintiff's petition is dismissed and that ordinance No. 15068 be adjudged a valid exercise by the city council of its police power and is constitutional and valid.

AFFIRMED.