CASSEL REALTY COMPANY, APPELLANT, v. CITY OF OMAHA
ET AL., APPELLEES.

14 N. W. 2d 600

FILED MAY 19, 1944.   No. 31628.

*Ziegler, Dunn & Becker,* for appellant.

*Harold C. Linahan, G. H. Seig* and *Edward F. Fogarty,* contra.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action in equity originally instituted in the district court for Douglas county, Nebraska, by Cassel Realty Company, a corporation, plaintiff and appellant, against the city of Omaha, the individual members of the city commission of that city and the chief engineer of said city, defendants and appellees, the object and purpose of which is to have a zoning ordinance declared unconstitutional, null and void in its application to a certain tract of land belonging to plaintiff and to enjoin the enforcement of the ordinance in so far as it applies to the said tract of land.

The action was tried to the court whereupon decree was rendered denying the relief prayed by plaintiff. From this decree plaintiff has appealed.

As grounds for reversal plaintiff asserts that the court erred in finding that the ordinance in question was valid and constitutional; that the decree is contrary to and not sustained by the evidence; and that the decree is contrary to law.

Certain pertinent facts necessary to a proper understanding of the matter in controversy are the following: Fifty-second street in Omaha, Nebraska, extends north and south. Maple street extends east and west. Military avenue east of Fifty-second and south of Maple street extends from southeast to northwest. At or near the intersection of Fifty-second and Maple streets Military avenue enters and from that point westward about nine blocks coincides with Maple street. A double track street car line starting from downtown Omaha extends northwesterly over Military avenue to Fifty-second street, thence westerly over that part of Military avenue which is coincident with Maple street. Immediately west of Fifty-second street and north of Military

avenue is a body of land, approximately 20 acres, owned by plaintiff. The west boundary is Fifty-fourth street and the northern Bedford avenue. For many years this land was used and occupied as an amusement park. It was known as Krug Park. Prior to the times involved in this action this use had been discontinued and nearly all of the buildings and structures thereon had been removed. The only important structures remaining were a two-story brick building in the extreme southeast corner and a large wooden building. The lower part of the brick building had been used as a saloon and the upper part as an apartment. The wooden building had been used as a dance pavilion. At the time of the commencement of this action it was being used as a roller skating rink. Across Fifty-second street to the east in an area the north and south length of which is two blocks is situated the Benson High School. To the north in the same area is a public grade school. A part of the grade school building is used for high school purposes. Over 1,500 pupils attend the high school. Pupils come to the school from all directions. Access from the west and northwest is along Military avenue past the land of plaintiff and across Fifty-second street, from the south across Military, and from the southwest along and across Military and Fifty-second or across Military and Fifty-second. Several blocks to the west of Fifty-second and Military beginning at about Fifty-ninth street is a business or commercial area. In this area are stores, shops, a bank and various other commercial enterprises. This is known as the business center of Benson. This center with its surrounding territory was at one time a separate municipal corporation. It has since been made a part of the metropolitan city of Omaha. This is not to say that there are no business or commercial establishments east of Fifty-ninth street. It appears that between Fifty-fourth and Fifty-ninth streets on the north side of Military somewhat more than half of the frontage is either occupied by residences or are vacant and the buildings on the remainder are devoted wholly or in part to some kind of business. On the north side of Military avenue from

Fifty-second street to Fifty-fourth street, which is the property of the plaintiff, the condition has already been generally described. On the south side from Fifty-second to Fifty-ninth, about 600 feet are used in whole or in part for business, about 775 feet for residences, about 675 feet are vacant, 260 feet of which were formerly used as a used car sales and parking lot and on the rear of a space of 55 feet are two five-car garages.

In 1924, under authority of sections 14-401, 14-402 and 14-403, Comp. St. 1929, which sections are now a part of the home rule charter, the city commission adopted an ordinance classifying and zoning the city of Omaha for the purpose of regulating and restricting the location of trades and industries and the location of buildings designed for specific uses and for the division of the city into districts.

By the terms of this ordinance an area 125 feet in depth on both sides of Military avenue along plaintiff's property and for many blocks in both directions was zoned for commercial use, that is, it was ordained that in this area could be constructed buildings for commercial use, with exceptions not necessary to be mentioned here. Use for single or multiple unit residences was not prohibited. The name classification was "C" or Commercial District.

This classification and this zoning continued in full force and effect until December 24, 1941, when the city commission enacted a new ordinance by the terms of which an area 125 feet in depth on both sides of Military avenue from Fifty-second street to Fifty-sixth street was reclassified and rezoned. The rezoning removed the area from "C" to the classification of "B", Residence District.

The new or "B" classification prohibits construction on the property of buildings to be used for commercial purposes. It permits residences, multiple dwellings, boarding and lodging houses, hotels, hospitals and clinics, educational, philanthropic and eleemosynary institutions, nurseries and greenhouses, private clubs, fraternities and lodges, and certain accessory buildings customarily incident to the specific uses allowed.

Plaintiff contends that this reclassification and rezoning ordinance is illegal, unconstitutional and void for the reason that it is unreasonable, arbitrary and confiscatory.

Section 14-401, Comp. St. 1929, which is, as has been stated, a provision of the home rule charter of the city of Omaha, empowers the city commission to zone the city into districts and to restrict the use to which buildings in the particular districts may be put. Section 14-403 provides for the supplementing or changing of any such district.

The rezoning ordinance conformed to power granted to the city commission by the statute and the home rule charter. That the statute and charter is a valid exercise of the legislative prerogative under the police power can hardly be questioned. Also the exercise by the city commission of the power granted, if exercised reasonably and with due regard to rights of property and in the interest of public health, safety, morals and general welfare, is a proper prerogative.

On this subject in *Pettis v. Alpha Alpha Chapter of Phi Beta Pi*, 115 Neb. 525, 213 N. W. 835, this court quoted with approval the following from *Miller v. Board of Public Works*, 195 Cal. 477, 234 Pac. 381: "The police power, as such, is not confined within the circumscription of precedents, resting upon past conditions which do not cover and control present-day conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public, and as a commonwealth develops politically, economically, and socially, the police power likewise develops, within reason, to meet the changed and changing conditions, and what was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. In its inception the police power was closely concerned with the public peace, safety, morals, and health, without specific regard for the general welfare, but the increasing complexity of our civilization and institutions later gave rise to cases wherein the promotion of the public welfare was held by the courts to be a legitimate

object for the exercise of the police power, and as our civic life has developed, so has the definition of 'public welfare,' until it has been held to embrace regulations to promote the economic welfare, public convenience and general prosperity of the community."

The power of a city to adopt and enforce the provisions of zoning ordinances was sustained in *City of Lincoln v. Foss*, 119 Neb. 666, 230 N. W. 592.

Even before the passage of legislation authorizing the zoning of cities by ordinance legislation permitting cities to regulate the erection of buildings and other structures within the corporate limits in the interest of good government, general welfare, health, safety and security of the citizens was recognized and upheld. Within the right to regulate was included the right to preclude or prohibit the erection of buildings or structures for particular purposes.

In *State v. Withnell*, 91 Neb. 101, 135 N. W. 376, it was said: "By charter the state legislature delegated power to the city of Omaha in the following terms: 'To make and enforce all police regulations for the good government, general welfare, health, safety and security of the city and the citizens thereof;' and 'to prescribe fire limits and regulate the erection of all buildings and other structures within the corporate limits;' and 'to define, regulate, suppress and prevent nuisances.' * * * Under the authority thus conferred, the city council in passing the ordinance obviously intended to exercise the police power of the city, and the courts should not interfere with its enforcement unless its unreasonableness, or the want of necessity for such measure, is shown by satisfactory evidence." The case was one involving the prohibition of the erection of structures on real estate for a particular use.

The city of Omaha under its home rule charter has the power, by ordinance, to zone the city in the interest of public health, safety, morals and the general welfare. Any such act of the city must however not be unreasonable, discriminatory and arbitrary and it must bear some relationship to the purpose or purposes sought to be accomplished

by the ordinance. *State v. Withnell, supra; Standard Oil Co. v. City of Kearney,* 106 Neb. 558, 184 N. W. 109; *State ex rel. Westminster Presbyterian Church v. Edgecomb,* 108 Neb. 859, 189 N. W. 617, 27 A. L. R. 437; *Pettis v. Alpha Alpha Chapter of Phi Beta Pi, supra; City of Lincoln v. Foss, supra; City of Lincoln v. Logan-Jones,* 120 Neb. 827, 235 N. W. 583; *Hawkins v. City of Red Cloud,* 123 Neb. 487, 243 N. W. 431; *Richardson v. Braham,* 125 Neb. 142, 249 N. W. 557; *Baker v. Somerville,* 138 Neb. 466, 293 N. W. 326; *Dundee Realty Co. v. City of Omaha, ante,* p. 448, 13 N. W. 2d 634.

It may be added here that a zoning ordinance may not operate retroactively to deprive a property owner of his previously vested rights, that is to say, a zoning ordinance could not deprive the owner of a use to which property was put before the enactment of the ordinance.

In *Baker v. Somerville, supra,* it was said with regard to a zoning ordinance of the city of Omaha: "They acquired vested rights by contract and by expenditure of money before the city extended this regulation to their property. It is well-settled law that an ordinance cannot operate retroactively to deprive them of their previously vested rights."

It follows therefore that the zoning ordinance before us cannot operate to take away any right which became vested prior to its adoption.

We come now to a determination of the question of whether or not the zoning ordinance in question is unreasonable, arbitrary and confiscatory in its application to the plaintiff and its property hereinbefore described. Whether or not it is unreasonable, arbitrary and confiscatory must be determined by the evidence of the special surrounding conditions and circumstances. In *City of Lincoln v. Foss, supra,* a case dealing with a zoning ordinance, it was said: "It is difficult, if not impossible, to lay down any general rules describing the exact field of operation of such power that will fit cases arising in the future. Each must be controlled by the special conditions and circumstances surrounding it."

In an action in court to enjoin the enforcement of a zoning ordinance on the ground that it is unreasonable, arbitrary and confiscatory it is necessary to indulge the presumption that the city commission in the enactment was in possession of the facts relating to the necessity for the zoning restriction and that its legislation related and responded to such necessitous condition. *State v. Withnell, supra*; *Hawkins v. City of Red Cloud, supra*; *Dundee Realty Co. v. City of Omaha, supra.*

Another rule requiring observance by the court in such actions is that if necessity under the police power could have justified the zoning ordinance the court must assume that it did. On this proposition this court in *Pettis v. Alpha Alpha Chapter of Phi Beta Pi, supra,* quoted with approval the following from *State v. City of New Orleans,* 154 La. 271, 97 So. 440: "If considerations of public health, safety, comfort, or general welfare could have justified zoning ordinance, the court must assume that they did justify it, and cannot take issue with the city council."

If then on the record presented there was evidence upon which the city commission could have said that the zoning ordinance in question was necessary in consideration of public health, safety, comfort or general welfare, it is beyond the province of the court to say that it is unreasonable, arbitrary or confiscatory even though it may depreciate in value business property or restrict the liberty of citizens in regard to ownership and use of property. *Pettis v. Alpha Alpha Chapter of Phi Beta Pi, supra*; *Hawkins v. City of Red Cloud, supra.*

It becomes necessary now to examine further the evidence to ascertain whether or not there were facts upon which the city commission could have concluded that this zoning was in the interest of public health, safety, comfort or general welfare.

We find nothing upon which to base a decision that the zoning was in the interest of public health.

On the matter of public safety we find that, as has already been pointed out, immediately to the east of the area

involved is a public high school accommodating more than 1,500 pupils; that the major portion of these pupils must pass along the street in front of the property involved or cross at the street intersection directly to the east; that traffic on Military avenue and at the intersection is already heavy and that a hazardous condition exists; that additional commercial establishments in the area rezoned and particularly on the property of plaintiff would materially increase the hazard and increase the danger to school pupils going to and from this high school.

On the matter of comfort witnesses who live or have lived in or near the location involved testified to the discomfort occasioned by commercial enterprises already in the vicinity. At least one witness testified that the confusion from commercial enterprises was so great that in order to obtain sufficient quietude for sleep he was compelled to abandon his residence in the area at a very great sacrifice. These witnesses concluded that from an increase in commercial enterprises would flow added confusion.

On the matter of public morals, which we take it is an element of general welfare, it was indicated in the evidence that commercial institutions such as would probably be established in this area would provide distractions for school pupils and loafing places which would bring about delinquencies in attendance upon classes. This conclusion depended upon observations of places already in close proximity and experiences at other schools.

Again under the general welfare witnesses, among whom were real estate men informed as to the elements affecting the value of residence properties, testified that a commercial area at this location would decrease the residence value of the surrounding area materially. Some said the value would be adversely affected for a distance of one block and some more than that. One said the effect would extend four or five blocks. Witnesses for plaintiff admitted that there would be an effect but that it would be slight and that it would not extend beyond the first block.

In this connection it may be well to note that the entire

area in every direction for many blocks from the location involved here was zoned, used and being developed for residence purposes except the lands of plaintiff, the grounds used for school purposes and 125 feet along both sides of Military avenue or Maple street. Also it may be said that it was the contemplation of the plaintiff that all of its land except 125 feet or a slightly deeper area should be platted and subdivided for residence purposes.

The evidence discloses that necessity or convenience to the community does not require that commercial enterprises shall be established between Fifty-second and Fifty-sixth streets. To the west and in the Benson business section it sufficiently appears that the community needs and convenience may now be adequately met and that in this area are vacant locations available for additional commercial enterprises.

On the other side plaintiff makes two contentions which are substantially supported by evidence. The first is that its property to the depth of 125 feet along Military avenue is not suitable for residence property of any kind or character. The second is that if permitted to use the area for commercial purposes plaintiff could sell it for prices greatly in excess of prices that could be obtained for any other purpose.

As against this, witnesses for the defendants say that this frontage likely could be sold for higher prices for commercial purposes than any other but that if platted in conformity with the rezoning ordinance the loss on the frontage would be made up in an increased value for residence purposes of plaintiff's land to the north.

This we think is a fair summary of the pertinent evidence bearing on this inquiry.

The law presumes and this court must therefore assume that the city commission was informed of these facts and that the rezoning ordinance was enacted with reference to this information.

Was this evidence sufficient to a degree that the Omaha city commission could have said that the zoning ordinance

was necessary in consideration of the public health, safety, comfort or general welfare? If it was of such quality then this court is bound by the action of the commission and may not hold the ordinance unreasonable, arbitrary and confiscatory and therefore void and unconstitutional. The finding of this court is an affirmative answer to the foregoing question.

The decree of the district court is affirmed.

AFFIRMED.